Joan L. Tylitzki, Plaintiff-Appellee, v. Triple X Service, Inc., a Corporation, and Richard E. Hebson, Defendants-Appellants.

Gen. No. 53,043.

First District, Second Division.

June 2, 1970.

Joseph A. Bailey and Jerome H. Torshen, of Chicago, for appellants.

Fred Lambruschi and Herbert P. Veldenz, of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken by Triple X Service, Inc. and Richard E. Hebson, defendants, from a judgment entered in the Circuit Court of Cook County in favor of Joan L. Tylitzki, plaintiff. After a jury trial on December 11, 1967, the court entered a judgment of $24,000 in favor of the plaintiff.

On October 23, 1962, the plaintiff was driving north in the east lane of Roselle Road in Hoffman Estates, approaching the intersection of Flagstaff Road, when her car collided with a truck driven by Richard E. Hebson, and owned by Triple X Service, Inc. Flagstaff Road was then under construction about eighty feet from its intersection point with Roselle Road, and barricades erected about eight feet from the road caused trucks to have only nine feet in which to pull in and out. Defendant Hebson was attempting to back his truck into the nine-foot gap to get back to the construction area, and had to pull onto Roselle Road several times, blocking the road. While he was maneuvering his truck, the plaintiff was driving north on Roselle; she saw the truck and slowed down, but, according to her testimony and that of one of her passengers, the truck came right through a stop sign and collided with her car. Defendant Hebson testified that there was no stop sign; and there is also conflict in the testimony as to whether the truck was moving at all at the time of the incident.

During the trial the court, at plaintiff's request, instructed the jury as follows:

> There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provides that:
>
> All construction work upon bridges or highways within the State of Illinois shall be so performed and conducted that two-way traffic will be main-

tained when such is safe and practical, and when not safe and practical, or when any portion of the highway is obstructed, one-way traffic shall be maintained, unless the authorized agency in charge of said construction directs the road be closed to all traffic.

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence.

The instruction should not have been given. It was objectionable on several grounds. The construction was on Flagstaff; the collision occurred on Roselle. The plaintiff maintains that Roselle was directly involved since trucks working at the construction site had to use Roselle to maneuver around to reach the project. We believe that a proper interpretation of the statute is that the legislature was attempting to reach a proper means of protecting the public traveling on the road which was itself the subject of the construction. Roselle was not such a road. The statute does not state that all arterial roads coming into the construction site shall be affected by the statute's directives; rather, it mentions "the highway," not all highways proximately related to the site.

■■ The instruction informed the jury that if "a party" violated the statute that fact could be considered in determining whether or not such "a party" was negligent. This rather vague reference is confusing. Furthermore, plaintiff's complaint does not even allege that the defendants were the ones charged with control of the construction site, yet the statute quoted to the jury refers to the "authorized agency in charge of said construction." The plaintiff was not entitled to the instruc-

147

tion since no foundation had been laid for it. Gerler v. Cooley, 41 Ill App2d 233, 190 NE2d 488.

We conclude that the plaintiff was not among the class of persons protected by the statute since she was not traveling on the road under construction at the time of the occurrence. Furthermore, the instruction should not have been given because there were no allegations that defendants were the parties charged with the responsibility of safety at the site; and the language of the instruction, referring to "a party," was more confusing than helpful. We are, therefore, reversing the judgment and remanding the cause for a new trial.

Since there will be a new trial we must now consider a matter which arose at the trial and which is likely to arise again. There was much testimony regarding the extent of plaintiff's injuries, including the testimony of a neurologist and an orthopedist, also testimony concerning the results of X rays, myelograms and electromyograms. As a part of plaintiff's treatment psychiatry was recommended, and at trial the defendants had subpoenaed her psychiatrist, attempting to put him on the stand. The plaintiff objected, the trial court sustained the objection and quashed the subpoena, refusing to allow the doctor to testify to matters regarding his psychiatric treatment or consultations with the plaintiff.

The defendants argue that plaintiff had placed her mental condition in issue by claiming past and future pain and suffering as one element of her damages. They further contend that with such a claim they should be allowed to question the psychiatrist so that it could be ascertained whether plaintiff's pain and suffering was truly the result of physical trauma sustained by the accident, or whether it was a manifestation of some unrelated cause. Ill Rev Stats 1965, c 51, § 5.2, provides in pertinent part:

> "In civil and criminal cases, . . . a patient . . . and a psychiatrist . . . have the privilege to refuse

148

to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental condition between patient and psychiatrist, . . . .

"There is no privilege under this Section for any relevant communications . . . .

" . . .

"(c) in a civil or administrative proceeding in which the patient introduced his mental condition as an element of his claim . . . ."

The question is presented as to whether a patient waives the privilege allowed by the above statutory provision when, in a civil proceeding, that patient claims damages founded upon pain and suffering. Phrased differently, the question is whether by claiming damages on the basis of pain and suffering, one ipso facto places "mental condition" in issue as an element of his claim. This precise point has been ruled upon in Webb v. Quincy City Lines, Inc., 73 Ill App2d 405, 219 NE2d 165, in which the court answered the question in the negative. The opinion noted at page 408 that ". . . the trial court held that the privilege statute applied, excluded the testimony of the psychiatrist and observed that the beneficent purposes of psychiatry can only be fully realized when the patient knows that what is revealed in the evaluation conferences or communications are free from judicial scrutiny . . ." unless he affirmatively places his mental condition into issue.

We agree that it is the affirmative aspect which should be controlling. The privilege is too important to be brushed aside when the mental condition of the plaintiff may be only peripherally involved. It is not difficult to consider the many ways in which it could be argued that mental conditions were at issue, and soon there would exist more areas of inquiry deemed exceptions to the privilege than there would be areas of inquiry protected by the privilege. The ability to observe, to con-

centrate, to relate our knowledge to others in a comprehensible manner, to tell the truth under oath, and many other phenomena, are all partially dependent upon what could be called one's "mental condition." Thus, the extension of defendants' argument is to urge that whenever a plaintiff who has been under psychiatric care testifies at a trial, the defendant should be allowed to call the plaintiff's psychiatrist to the stand so that he could give a detailed analysis of the plaintiff's mental condition to aid the trier of fact in evaluating the merit of plaintiff's testimony. The important purpose of the creation of a patient-client privilege, however, was not meant to be paid lip service while being effectually eroded by judicial construction.

Other courts which have been faced with similar questions have also concluded that the privilege should not be deemed waived unless affirmatively asserted to be in issue. In Collins v. Bair (Ind App), 252 NE2d 448 (1969), the plaintiff sued for injuries sustained from the alleged negligence of defendant's operation of her automobile. Plaintiff introduced many witnesses who testified that the injuries were the result of the accident. The defendant then called to the stand a chiropractor who had examined and treated the plaintiff. The trial court refused to allow the witness to testify regarding the area of plaintiff's body which he had treated, and the reviewing court reversed and remanded, holding that the plaintiff had waived his physician-patient privilege when he affirmatively made his physical well-being a part of his claim. At page 455 in Collins, the court said: "If a patient, by way of complaint, counterclaim or affirmative defense, places in issue his physical or mental condition, then he automatically waives the privilege. . . ."

In Koump v. Smith, 25 NY2d 287, 250 NE2d 857 (1969), part of plaintiff's complaint alleged that at the

time of the accident in question the defendant's intoxicated condition caused the collision. The defendant denied the allegations, and the plaintiff requested permission to obtain copies of hospital records relating to defendant's physical condition after the accident. The court held that the records were privileged because the defendant had not affirmatively placed into issue his physical condition; that the simple denial of the allegation did not "affirmatively" put into issue defendant's physical condition.

The recognition that waiver of the privilege does occur when mental or physical condition has been affirmatively placed into issue carries with it the recognition that the privilege can be abused. In Koump the court noted at page 861: "A party should not be permitted to assert a mental or physical condition in seeking damages or in seeking to absolve himself from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition." This concern over the potential abuse of the privilege, the capability of using it to prevent full disclosure of the truth, has been noted by eminent authorities. 8 Wigmore, Evidence (McNaughton Rev, 1961), § 2380a; McCormick, Evidence (1954), § 108.

■■ We fully agree that the privilege should not be abused, and we therefore concur in the view that the privilege can be waived either expressly or by affirmatively placing in issue one's physical or mental condition. However, one does not place into issue his mental condition by including in his complaint an allegation for pain and suffering. Unless mental well-being is specifically made an issue by the pleadings, the privilege pertains, and our trial courts should sustain plaintiffs' objections to permitting psychiatrists to testify as to plaintiffs' "mental condition."

151

Consequently, in the instant case the judgment must be reversed and remanded to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded with directions.

LYONS and BURKE, JJ., concur.