JAMES LAURENT *et al.*, Plaintiffs-Appellees, *v.* DR. TERRY BRELJI, Superintendent, Chester Mental Health Center, Defendant-Appellant.

Fourth District   No. 15460

Opinion filed July 17, 1979.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

Bruce Finne, of Illinois Civil Service Commission, of Springfield and Jacob Pomeranz, of Cornfield and Feldman, of Chicago, for appellees.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

This appeal was taken from an order of the circuit court directing the defendant, Dr. Terry Brelji, as Superintendent of the Chester Mental Health Center, to comply with an administrative *subpoena duces tecum*. This subpoena ordered Dr. Brelji to testify and produce for inspection the records of a former patient of the Chester facility.

Although somewhat sketchy because of the incompleteness of the record, the factual background for this order begins with a Civil Service Commission discharge proceeding brought against the plaintiff, James Laurent. Laurent, as part of his defense to the discharge proceeding, sought, and had issued by the administrative hearing officer, the *subpoena duces tecum* which was served on Dr. Brelji. The records sought to be produced concerned a patient who is hereinafter referred to as L. S. At the Commission hearing, L. S. had testified concerning an incident wherein he was allegedly subjected to harassment and abuse by Laurent, an employee at the Chester facility.

Following the issuance of the administrative subpoena, Dr. Brelji filed a motion to quash the subpoena, which was denied by the hearing officer. On March 2, 1979, Laurent and the Commission filed a petition in circuit court for enforcement of the subpoena contending that Dr. Brelji and the Department of Mental Health and Developmental Disabilities (DMHDD) had refused to comply with the administrative order. The circuit court entered an order directing Dr. Brelji to:

"* * * appear to testify before a Hearing Officer of the Civil Service Commission and to bring with him for inspection all books and records in the possession of DMHDD pertaining to [L. S.] at the next scheduled hearing.

3. Said records will be subjected to an in camera inspection of counsel and said Hearing Officer and any such documents which are determined to be probative shall be allowed as evidence provided they are copied so that all reference to the identity of any patient is removed."

The propriety of that order, which Dr. Brelji contends requires the production of privileged information, is the subject of this appeal.

■■ Before proceeding to the merits of the case, we initially address the question of our jurisdiction over the controversy. Generally, an order allowing discovery or directing disclosure of information is considered interlocutory and, therefore, not appealable. A party could, nevertheless, test the validity of such an order by refusing to obey and defending in a

contempt proceeding. An order of contempt is clearly appealable. *Moffat Coal Co. v. Industrial Com.* (1947), 397 Ill. 196, 73 N.E.2d 423; *Firebaugh v. Traff* (1933), 353 Ill. 82, 186 N.E. 526.

■■ The absence of an order of contempt in this case, however, does not deprive us of jurisdiction over the matter, since we conclude the order of the circuit court was final and not interlocutory. An order which in substance finally adjudicates the rights of the parties and terminates the litigation is final and appealable. (*Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114.) Here, the proceeding before the circuit court was a separate, independent action. (See Ill. Rev. Stat. 1977, ch. 127, par. 63b116.) After the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated. In that sense it was distinguishable from other discovery orders entered in a cause pending in the same court. The order of the court finally determined the rights of the parties before it and terminated the litigation. (See *Ellis v. Interstate Commerce Com.* (1915), 237 U.S. 434, 59 L. Ed. 1036, 35 S. Ct. 645; *Durkin v. Hey* (1941), 376 Ill. 292, 33 N.E.2d 463.) Finally, we note that section 10(b) of the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 810) purports to grant parties a right of interlocutory appeal from orders to disclose confidential records or communications. Because we have determined that the order here is final and appealable, section 10(b) is not apropos and we, therefore, do not reach the issue of the validity of that provision. See generally, *In re Marriage of Lentz* (1979), 73 Ill. App. 3d 93, 391 N.E.2d 582.

We begin our discussion of the merits with the observation that the Mental Health and Developmental Disabilities Confidentiality Act represents a comprehensive revision and repeal of previous acts dealing with psychotherapeutic communications. (Ill. Rev. Stat. 1977, ch. 51, par. 5.2 (repealed by P.A. 80-1508, art. II, §5, eff. Jan. 9, 1979); Ill. Rev. Stat. 1977, ch. 111, par. 5306 (amended by P.A. 80-1508, art. II, §3, eff. Jan. 1, 1979).) To meet the avowed purpose of protecting the confidentiality of the records and communications of those receiving mental health services ("recipients"), the Act is premised on a general prohibition against the disclosure of such information except where specifically provided for in the Act. Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 803(a).

It is contended on behalf of Dr. Brelji that the Commission discharge proceeding does not fall within any of the designated exceptions wherein disclosure of confidential information is permitted. In response, it is argued by the Commission and Laurent that the Commission has absolute statutory power to compel disclosure of records which in its opinion are pertinent and relevant to hearings held before it. Because in their opinion

the records pertaining to L.S. are relevant, they argue that the information must necessarily be produced.

It is unquestioned that the Personnel Code provides the Commission with broad, and seemingly unqualified, investigatory powers. (See, *e.g.*, Ill. Rev. Stat. 1977, ch. 127, pars. 63b110(6), 63b111, 63b115.) However, the power to hold hearings, subpoena witnesses and compel the production of documents does not exist in a vacuum. As we noted in *In re Westland* (1976), 48 Ill. App. 3d 172, 362 N.E.2d 1153, the creation of a statutory privilege is a *legislative balance* between the encouragement and protection of confidential relationships and the interest of disclosure of relevant information before an investigatory body. The inquiry of whether given information is subject to disclosure does not end with the determination that it is relevant. Implicit in every testimonial privilege is the assumption that the privileged matter may indeed be highly probative of the issues in dispute. Despite any relevance, however, the promotion and protection of certain relationships is deemed to be of greater value than the unqualified disclosure of pertinent information incident to individual disputes.

Presumably, the patient in psychotherapeutic treatment reveals the most private and secret aspects of his mind and soul. To casually allow public disclosure of such would desecrate any notion of an individual's right to privacy. At the same time, confidentiality is essential to the treatment process itself, which can be truly effective only when there is complete candor and revelation by the patient. Finally, confidentiality provides proper assurances and inducement for persons who need treatment to seek it. See generally Note, *Psychiatrists' Duty to the Public: Protection from Dangerous Patients*, 1976 U. Ill. L.F. 1103 (1976); Slovenko, *Psychiatry and a Second Look at the Medical Privilege*, 6 Wayne L. Rev. 175 (1960).

■■ These, undoubtedly, were some of the considerations weighed by the legislature in enacting the general prohibition against disclosure of recipient records and communications. However, legislative recognition of a testimonial privilege does not afford absolute protection against disclosure. Thus, the legislature acknowledged the countervailing societal needs which demand disclosure in certain instances by creating exceptions to the no-disclosure mandate. In proceeding with our analysis, we are cognizant that the expression of statutory exceptions is generally construed as an intention by the legislature to exclude all others. (*In re Westland.*) Our task then is to determine whether the order in question falls within the perimeters of these exceptions.

The instances wherein disclosure, without consent of the recipient, is permitted are set forth in sections 6 through 11 of the Act. We are

concerned generally only with section 10 and particularly with subsection (a)(1) which provides:

> "(1) Records and communications may be disclosed in a civil or administrative proceeding in which the *recipient introduces* his mental condition or *any aspect of his services received for such condition* as an element of his claim or defense, * * *." (Emphasis added.) Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 810(a)(1).

Under the repealed section 5.2 of "An Act in regard to evidence * * *" (Ill. Rev. Stat. 1977, ch. 51, par. 5.2), an analogous provision allowed disclosure only when the patient introduced his mental condition as an element of his claim or defense. Under the new Act, therefore, it is clear that the legislature intended to expand the scope for waiver of the privilege.

It is apparent on this record that L. S., incident to an administrative proceeding, introduced an aspect of the services he received for his mental condition (the alleged abuse by Laurent). It is argued on behalf of Dr. Brelji, however, that introduction of this matter was not the result of any claim or defense by L. S. It is in essence the position of Dr. Brelji that this provision is limited to the *patient-litigant* situation. It is thus maintained that since the administrative claim before the Commission was instituted by the DMHDD and not L. S., section 10(a)(1) is inapplicable.

We do not construe the legislature's use of the term "claim" so narrowly. Interpreting "claim" to be synonymous with cause of action (which is essentially defendant's position) would result in a rather incongruous situation. For example, if section 10(a)(1) were limited to a patient-litigant scenario, and assuming L. S. instituted a *personal* action against Laurent based on the same allegations of abuse, the records and communications in question here would apparently be subject to disclosure. It would appear somewhat anomalous to allow the information to be revealed under those circumstances while precluding disclosure pursuant to an administrative hearing wherein the recipient is a complaining witness concerning the care and services provided him as a patient. The allegations of the patient, in both instances, would be nearly indistinguishable. In many respects the issues raised would be identical. Finally, the potential loss or deprivation facing the respondent in an administrative discharge proceeding could easily be as substantial as an employee's personal liability to a patient.

We believe this case provides a keen example of an instance where the balance of competing values falls on the side of disclosure. The facts and issues before the investigating body relate directly to the witness' hospitalization. The incident in question specifically arose during the course of his hospitalization. The respondent in such a proceeding would

necessarily know the identity of the witness and the fact of his mental treatment. Contrary to defendant's argument, a finding that L. S.' testimony amounts to a "claim" will not completely undermine or destroy the protective quality of the privilege. Our conclusion that the records of L. S. are subject to disclosure in no manner implies that a person, merely by presenting himself as a witness, must run the risk of having his entire mental history drug out and exposed before a public hearing for the ostensible purpose questioning his perceptive capabilities. Our decision is clearly much more limited than defendant would suggest. We merely hold that in defending against the accusations of this witness there is no discernible distinction between the proceeding here and a personal action by the recipient based on the same allegations (which defendant concedes would justify disclosure). We conclude, therefore, that the legislature did not intend, by the mere employment of the term "claim," to distinguish between these situations. We find that, under this record, L.S. has introduced an aspect of the services he received for his mental treatment within the meaning of the Act.

■ Having determined that the recipient's records and communications *may* be subject to disclosure, we must, nevertheless, determine whether the order entered was proper. The waiver of the privilege found in section 10(a)(1) is not unqualified. It is expressly stipulated that records and communications may be disclosed:

> "* * * if and only to the extent the court in which the proceedings have been brought, or, *in the case of an administrative proceeding, the court to which an* appeal or other *action for review of an administrative determination may be taken*, finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." (Emphasis added.) Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 810(a)(1).

The circuit court order directed an in camera inspection of all the records and communications with respect to L. S. before the administrative hearing officer. We believe the proper procedure, as mandated by this section, is for the *court* to inspect and review the testimony and evidence concerning L. S.' records and communications to determine what information is relevant to the administrative hearing. There is no indication from this record concerning how this confidential information is relevant to the discharge proceeding or whether other

information is available. Finally, we note that section 10(a)(1) requires the party seeking disclosure of information other than the fact of treatment, the cost of services, and the ultimate diagnosis, to establish "a compelling need for its production." (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 810(a)(1).) Because numerous questions remain under this record which will not be disposed of by the court's order directing that disclosure be made before the hearing officer, we must reverse the order of the trial court and remand the cause for further proceedings in accordance with section 10(a)(1) of the Act. Accordingly, the order of the circuit court is reversed and the cause remanded, with directions that the court proceed with an in camera examination and review of the testimony and evidence concerning the relevance, probativeness, and need for the information sought to be produced.

Reversed and remanded with directions.

MILLS and CRAVEN, JJ., concur.