THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN DOE AND KAREN HELFRICH, Defendants-Appellants.

First District (5th Division)   No. 1—88—2511

Opinion filed March 28, 1991.

Richard E. Cunningham, of Protection and Advocacy, Inc., of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Jane E. Loeb, and Michael J. Drake, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Karen Helfrich, a therapist and director of a housing corporation which provides treatment for mentally ill patients, appeals from an order denying her motion to quash a grand jury subpoena *duces tecum*. Helfrich maintains that the subpoena, which was issued pursuant to a "John Doe investigation" for homicide, violates the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1989, ch. 91½, par. 801 *et seq.*) (the Confidentiality Act), and other constitutional rights to privacy. On appeal, we consider the following issues: (1) whether an order denying a motion to quash a subpoena *duces tecum* is final and appealable, or whether the party appealing must test the validity of the order in a contempt proceeding; (2) whether the record on appeal, which does not contain a transcript of the proceedings, precludes this court from addressing the merits where no evidence was presented to the trial court, and where the trial court's ruling addressed only questions of law; and (3) whether the information requested in the subpoena *duces tecum* falls under an exception to the Confidentiality Act.

We reverse.

Karen Helfrich is a therapist and the executive director of 7720, Inc., a housing corporation that provides alternative housing and treatment for chronically mentally ill persons. In 1988, a grand jury subpoena *duces tecum* was issued to Helfrich commanding her to produce information before the grand jury in a "John Doe investigation" for homicide. Specifically, the subpoena called for "any and all information on all male tenants of 7720, Inc." This information was requested by a Chicago police detective, Thomas Sappanos, based on his investigation and good-faith belief that a tenant of 7720, Inc., was involved in a homicide.

A motion to quash the subpoena was filed on behalf of Helfrich and all of the male tenants of 7720, Inc. The motion alleged that the subpoena violated the Confidentiality Act and other constitutional rights to privacy. The judge held a conference in his chambers to decide the motion. Apparently, the attorneys did not present evidence during this conference nor did they provide for a transcript of the proceedings. The trial judge denied, in part, the motion to quash the subpoena and entered an order commanding Helfrich to produce the full names, dates of birth, addresses and former addresses, social security numbers, and the period of residency at 7720, Inc., for all male residents between August 1, 1987, and August 16, 1988. The language "any and all information" was dropped from the order.

Thereafter, Helfrich declined to comply with the order. Instead of testing the validity of the order in a contempt proceeding, Helfrich filed this appeal. The State filed a motion to dismiss the appeal, arguing that the trial judge's order was not final and appealable. Helfrich filed a response to this motion arguing, in part, that this court did have jurisdiction because it was not necessary for Helfrich to test the validity of the order in a contempt proceeding before filing this appeal. Helfrich attached her own affidavit to the response stating that she had a conversation with Detective Thomas Sappanos in which Sappanos admitted he did not have any suspects or leads in the homicide investigation; that he was also obtaining information from a transient hotel in the area of 7720, Inc.; and that he hoped that all of this information might provide him with a suspect or lead. The affidavit also stated that Sappanos thought that 7720, Inc., was a halfway house for convicted criminals released from prison. This court entered an order denying the State's motion to dismiss. Enforcement of the trial court order has been stayed pending the outcome of this appeal.

Lastly, the heading for this opinion, which identifies Helfrich as a defendant-appellant, is the same heading that appears on the record on appeal and the briefs. We note, however, that Helfrich is neither a sus-

pect in the homicide investigation nor a criminal defendant pursuant to contempt proceedings. Helfrich is only a potential witness before the grand jury. Therefore, the appropriate heading should be *"In re August 1988 Grand Jury No. 406* (The People of the State of Illinois, Plaintiff-Appellee, v. John Doe, Defendant, Karen Helfrich, Appellant)."

OPINION

■ Case law has established that an order denying a motion to quash a subpoena *duces tecum* can be a final and appealable order. (*Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 392 N.E.2d 929.) In *Laurent*, the superintendent of a mental health center was served a subpoena *duces tecum* as part of an independent action. The superintendent filed a motion to quash the subpoena arguing that it violated the Confidentiality Act. The trial judge entered an order denying the motion, and the superintendent immediately appealed the order. The appellate court accepted jurisdiction over the appeal despite the fact that the superintendent did not test the validity of the order in a contempt proceeding. The court stated:

> "The absence of an order of contempt in this case, however, does not deprive us of jurisdiction over the matter, since we conclude the order of the circuit court was final and not interlocutory. *** Here, the proceeding before the circuit court was a separate, independent action. [Citation.] After the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated. In that sense it was distinguishable from other discovery orders entered in a cause pending in the same court." *Laurent*, 74 Ill. App. 3d at 216, 392 N.E.2d at 930-31.

■ The present case is clearly analogous to *Laurent*. The action brought against Helfrich was a separate, independent action from the ongoing John Doe grand jury investigation. The order commanding Helfrich to produce the information terminated the proceeding and finally adjudicated the rights of the parties. Therefore, we hold that the order denying the motion to quash the subpoena *duces tecum* was final and appealable.

Note that in reaching this conclusion we are cognizant of the Federal authority that an order denying a grand jury subpoena *duces tecum* is not final and appealable. (*United States v. Ryan* (1971), 402 U.S. 530, 29 L. Ed. 2d 85, 91 S. Ct. 1580.) Illinois law has distinguished the rule in *Ryan. In re October 1985 Grand Jury No. 746* (1987), 154 Ill. App. 3d 288, 507 N.E.2d 6.

■ The second issue is whether the record on appeal, which does not contain a transcript of the proceedings, precludes this court from addressing the merits where no evidence was presented to the trial judge, and where the trial judge's ruling addressed only questions of law. Once again, the case law controls this issue. Helfrich's brief cites to several cases which stand for the rule that a record on appeal is sufficient without a transcript of the proceedings where no evidence was presented to the trial court and the ruling was based on the pleadings or concerned questions of law. (See, *e.g., Flannery v. Marathon Oil Co.* (1979), 75 Ill. App. 3d 690, 394 N.E.2d 706; *Maynard v. Parker* (1977), 54 Ill. App. 3d 141, 369 N.E.2d 352, *aff'd* (1979), 75 Ill. 2d 73, 387 N.E.2d 298.) Moreover, deficiencies in the record do not affect this court's power to adjudicate a particular issue in the interest of complete justice. (*American National Bank & Trust Co. v. Erickson* (1983), 115 Ill. App. 3d 1026, 452 N.E.2d 3.) The disclosure of confidential information is a matter which requires complete justice. Therefore, based on all of the above, we hold the record on appeal, which does not contain a transcript of the proceedings, does not preclude this court from addressing the merits of the case.

The third issue is whether the information requested in the subpoena *duces tecum* falls under an exception to the Confidentiality Act. We deem it necessary, however, to address this issue by first distinguishing the instant case from *People v. Florendo* (1983), 95 Ill. 2d 155, 447 N.E.2d 282. In *Florendo*, the grand jury issued a subpoena *duces tecum* to the president of a medical abortion center requesting "any and all medical records" for 47 patients. Pursuant to the president's motion to quash, the trial judge entered an order limiting the scope of the subpoena to information contained on the patients' identification cards. The president refused to comply with the order. The case reached the Illinois Supreme Court, where it was held that the information on the identification cards was *not* privileged information. Therefore, the president's argument that the disclosure of the information violated the physician-patient privilege (citing Ill. Rev. Stat. 1979, ch. 51, par. 5.1) did not apply. In reaching their holding, the court relied on the following language in section 5.1:

> "No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, *necessary to enable him professionally to serve such patient."* (Emphasis in original.) (Ill. Rev. Stat. 1979, ch. 51, par. 5.1.)

Because the president conceded that the information on the identification cards was not necessary to professionally serve the patients, the

court held that the information was not privileged. It was not necessary for the court to reach the question whether an exception to the act allowed for the disclosure.

██ █ In the instant case, although the trial judge (who also presided in *Florendo*) limited the scope of the subpoena to information "identifying" the male residents, we hold that this information *is* privileged. An analysis of the applicable statutory language provides the basis for our holding. In section 2 of the Confidentiality Act, a confidential communication is defined as:

> "[*A*]*ny communication* made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. *Communication includes information which indicates that a person is a recipient.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 91½, par. 802.)

The definition of confidential communication in section 2 does not contain the qualifying language "necessary to enable him to professionally serve such patient." Instead, the definition consists of "any communication" including "information which indicates that a person is a recipient." The information requested here indicates that the person was a recipient of the services of 7720, Inc. Therefore, the information is confidential and is covered by the Confidentiality Act. In turn, we must reach the question whether an exception to the Confidentiality Act allows for the disclosure.

The State argues that the exception contained in section 10(a)(9) applies. It states:

> "Records and communications of the recipient may be disclosed in investigations of and trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide." Ill. Rev. Stat. 1989, ch. 91½, par. 810(a)(9).

██ We cannot agree that this exception applies. The legislature intentionally included the words "directly" and "immediate" in this exception. (See *Rosewood Corp. v. Transamerica Insurance Co.* (1972), 8 Ill. App. 3d 592, 290 N.E.2d 656 (terms expressly stated in a statute were intended by legislature), *aff'd* (1974), 57 Ill. 2d 247, 311 N.E.2d 673.) Therefore, a showing that the disclosure merely relates to the circumstances of a homicide is not sufficient to invoke the exception. There must be a showing that the disclosure *directly* relates to the *immediate* circumstances of the homicide.

The State has not made such a showing in this case. No person in 7720, Inc., is a target in the John Doe investigation. The police have admitted that they do not even have a lead. They have requested infor-

mation from 7720, Inc. (and another transient hotel), in the hope that they might find a suspect or a lead. These facts seem to suggest that the police have embarked on what Helfrich characterizes as a fishing expedition. At any rate, the State has not made a showing that the disclosure *directly* relates to the *immediate* circumstances of a homicide.

■ The State has raised a procedural point on this issue. Affidavits are not part of the common-law record, and they may be preserved for review only by their inclusion in a bill of exceptions signed by the trial judge. (*People v. Barnes* (1950), 405 Ill. 30, 89 N.E.2d 791.) Helfrich's affidavit, which contained some of the information cited above, was not preserved for review by its inclusion in a bill of exceptions signed by the trial judge. Therefore, the State argues that this court should not consider the affidavit. Accepting this as true, we observe that the State has still not made a showing that the disclosure *directly* relates to the *immediate* circumstances of a homicide.

Therefore, we hold that the trial judge's order denying the motion to quash the subpoena *duces tecum* was improper.

Given that we have disposed of this appeal based on a construction of the appropriate statutory language, it is not necessary to reach the constitutional questions raised by Helfrich.

Reversed.

MURRAY and GORDON, JJ., concur.