Second Division

August 3, 1999

No.  1-98-0768

CYNTHIA LEWIS, Indiv. and as Special Adm'r of ) Appeal from the 

the Estate of Baby Boy Lewis, Deceased, AND ) Circuit Court of

DENNIS DEZUTTER, Indiv., ) Cook County.

)

Plaintiffs-Appellees, )

)

v. )

) 

FAMILY PLANNING MANAGEMENT, INC., )

d/b/a Albany Medical-Surgical Center, )

FAMILY PLANNING ASSOCIATES MEDICAL )

GROUP, LTD., E. STEVEN LICHTENBERG, )

M.D., KATHY FITCH, COLLEEN )

COLLEEN HAMMOND, and JANE DOE, )

)

Defendants-Appellants )

)

(Diana Maracich, Kathy McLean, Yvette )

Johnson, Geneva Harris, And Renee ) 

Kraj, ) Honorable

) Kathy M. Flanagan,

Appellants). ) Judge Presiding.

JUSTICE RAKOWSKI delivered the opinion of the court:

This appeal arises from a medical malpractice claim against an abortion clinic and some of its personnel.  Certain defendants and nonparty witnesses (collectively deponents) refused to answer various questions during discovery depositions.  The trial court ordered them to answer the questions.  The court's order further provided that a cost of $100 per day would be assessed against any deponent not in compliance after 14 days.  Deponents filed this appeal under Supreme Court Rule 304(b)(5), allowing appeals from orders "finding a person *** in contempt of court which imposes a monetary or other penalty."  155 Ill. 2d R. 304(b)(5).  Because the 
trial court neither found deponents in contempt nor imposed a penalty for contempt, we find 
that the requirements of Supreme Court Rule 304(b)(5) have not been met and conclude that we lack jurisdiction over this case.  Consequently, we dismiss this appeal.

I.  Facts

The genesis of this appeal is a medical negligence brought by plaintiffs Cynthia Lewis and Dennis Dezutter, individually, and Cynthia Lewis as special administrator of the estate of Baby Boy Lewis, deceased (collectively plaintiffs).  As defendants, plaintiffs named Family Planning Management, Inc., d/b/a Albany Medical-Surgical Center (Center), Family Planning Associates Medical Group, Ltd., Dr. E. Steven Lichtenberg, Kathy Fitch, Colleen Hammond, and Jane Doe (collectively defendants).  Plaintiffs allege that Lewis changed her mind about proceeding with an abortion after defendants initiated a three-day abortion procedure.  Upon asking defendants to stop the procedure, defendants allegedly misinformed her that once the procedure was begun, it could not be stopped.  As such, plaintiffs contend, 
inter alia
, that defendants completed the abortion without Lewis' informed consent.

Plaintiffs deposed the Center's former nursing supervisor, Dolly Barnet, and its nurse practitioner, Rita Wollenshchlager.  Each answered all questions regarding education, social security number, and residence address.  Subsequently, defendants filed a motion seeking a protective order.  Defendants' proposed protective order would have allowed defendants and all of the Center's employees, including Diana Maracich, Kathy McLean, Yvette Johnson, Geneva Harris, and Renee Kraj, to refrain from providing certain personal information such as their residential addresses, social security numbers, and educational background.  On September 23, 1997, the trial court denied defendants' motion but entered its own protective order.  It provided that all discovery materials would be restricted to the parties, their attorneys, retained opinion witnesses, and consultants.

Subsequent to the trial court's ruling, plaintiffs took additional depositions, including those of defendants Dr. E. Steven Lichtenberg, Kathy Fitch, and Colleen Hammond and employees Diana Maracich, Kathy McLean, Yvette Johnson, Geneva Harris, and Renee Kraj.  At the depositions, each deponent was asked to provide age, date of birth, educational background, residential address, and social security number, and each refused to provide some or most of the requested information.  Those questions were certified.

Plaintiffs filed a combined motion to compel answers to the certified questions and motion for sanctions, arguing that deponents had engaged in a contumacious disregard for the trial court's September 23, 1997, order.  On February 20, 1998, the trial court granted the motion to compel, giving the deponents 14 days to provide answers to the certified questions by affidavit.  The trial court further provided that "[a]ny party not in compliance with this order after the expiration of the [14]-day period will be assessed a cost of $100 per day."  The order was devoid of any type of contempt finding.

The deponents filed their notice of appeal, citing both the September and February orders for its basis.  Plaintiffs filed a motion to dismiss this appeal, which was denied by another division of this court.  Sanctions were also stayed pending the outcome of this appeal.

Initially upon review of the briefs and the record we questioned whether the requirements of Supreme Court Rule 304(b)(5) were met to establish our jurisdiction over this appeal.  As such, we issued an order on April 6, 1999, drawing the parties' attention to our concern and requesting them to be prepared at oral argument to discuss the issue.  We also granted the parties, at their discretion, an opportunity to supplement the record or provide any other materials that would aid the court in determining whether the instant appeal should be dismissed for want of jurisdiction.  Deponents filed a memorandum of law regarding jurisdiction, and all parties were prepared to address the issue at oral argument.  

II.  Analysis

The dispositive issue 
is whether we have jurisdiction to review the propriety of two interlocutory orders made in the course of discovery.  For the following reasons, we conclude that we do not.

Article VI, section 6, of the 1970 Illinois Constitution provides that "[a]ppeals from final judgments of a Circuit Court are a matter of right to the Appellate Court."  Ill. Const. 1970, art. VI, §6.  While article VI, section 6, vests with the Supreme Court of Illinois the general authority to promulgate rules governing appeals to the appellate court, section 16 of that article specifically grants the supreme court the authority to provide rules for appeals to the appellate court from nonfinal judgments.  Ill. Const. 1970, art. VI,  §§6, 16.  Pursuant to this constitutional authority, our supreme court maintains rules governing appeals from final judgments under Rules 301, 302, 303, and 304.  134 Ill. 2d R. 302; 155 Ill. 2d Rs. 301, 303, 304.  In particular, Rules 301 and 304 provide the jurisdictional basis for appealing final judgments, while Rule 303 provides the guidelines for effectuating such appeals.  155 Ill. 2d Rs. 301, 303, 304.  Rule 302 provides for direct appeals of final judgments to the supreme court.  134 Ill. 2d R. 302.  As to rules governing appeals of interlocutory orders, Rules 306 and 307 specify certain specified interlocutory, nonfinal orders that are appealable, and Rule 308 allows appeals from interlocutory, nonfinal orders that the circuit and appellate courts decide are necessary to expedite the case.  155 Ill. 2d R. 308.  

"A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment."  
People ex rel. Scott v. Silverstein
, 87 Ill. 2d 167, 171 (1981).  Accordingly, discovery orders are not appealable under Rule 301 nor are they directly appealable under Rule 304 since they are interlocutory in nature.  
See 
Silverstein
, 87 Ill. 2d at 171; 
In re Marriage of Young
, 244 Ill. App. 3d 313, 316 (1993); 
Kmoch v.Klein
, 214 Ill. App. 3d 185, 190-91 (1991); 4 R. Michael
, 
Illinois Practice §35.6 (1989) (hereinafter Illinois Practice).  Moreover, discovery orders are not within the class of appealable interlocutory orders delineated under Supreme Court Rules 306 or 307.  155 Ill. 2d Rs. 306, 307.  Rule 308(a) may provide a means to appeal a discovery order where both the circuit court and appellate court agree that "the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  155 Ill. 2d R. 308(a).  This rule, however, has not been invoked in this case.

One definite but indirect method of securing review of a discovery order does exist.  It is well settled that a party or witness may test a discovery order by refusing to comply, thereby forcing the trial court to find that party or witness in contempt and to assign an appropriate punishment.  
Silverstein
, 87 Ill. 2d at 171; 
People ex rel. General Motors Corp. v. Bua
, 37 Ill. 2d 180, 189 (1967); 
In re Marriage of Young
, 244 Ill. App. 3d at 316; 
Kmoch
, 214 Ill. App. 3d at 190-91.  
"[A]n order cast in terms of a contempt proceeding imposing sanctions is *** final and appealable" (
Silverstein
, 87 Ill. 2d at 171) because it 
necessarily stems from an "original special proceeding, collateral to and independent of, the case in which the contempt arises" (
Silverstein
, 87 Ill. 2d at 172).  See also 
Kmoch
, 214 Ill. App. 3d at 190-91.  Appeal of a contempt order "presents to the court for review the propriety of the order of the court claimed to have been violated."
  
Silverstein
, 87 Ill. 2d at 174.  See 
People ex rel. Birkett v. City of Chicago
, 292 Ill. App. 3d 745, 756 (1997) (contempt finding imposing a $100-a-day fine was vacated since failure to comply with discovery order to draw contempt finding was done in good faith to secure review of the discovery order).  Prior to December 1993, orders of contempt were appealed under Supreme Court Rule 301 since they represented final judgments.  

This practice was codified in December 1993 when Supreme Court Rule 304(b) was amended to expressly provide for appeals of contempt orders.  That amendment, contained in subpart (5) of Rule 304(b), simply states that "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty" is appealable without the finding required for appeals under 304(a).
(footnote: 1)  155 Ill. 2d R. 304(b)(5).  It is this provision that deponents cite as their basis for appeal.

However, neither order deponents appeal from mentions contempt or imposes a fine or other sanction as punishment for a contempt finding.  The September order provided the trial court's protective order and denied defendant's proposed protective order.  Similarly, although the February order mentioned plaintiffs' contentions that defendants had engaged in a "contumacious disregard" for the court's September ruling, it neither uses the term "contempt" in its discussion nor finds any deponent in contempt of court.  Rather, it granted plaintiffs' motion to compel defendants to answer the certified questions and imposed self-executing sanctions for any deponent's failure to comply with the order. Specifically, the portion imposing sanctions states that "[a]ny party not in compliance with this order after the expiration of the 14-day period will be assessed a cost of $100 per day." 

In light of these obvious shortcomings, deponents contend that contempt is implicit in the orders that are being appealed.  Specifically, deponents argue that the imposition of accumulating sanctions in conjunction with the fact the trial judge was temporarily absent and unavailable to reconsider her order after it was entered forced them to treat the order as one "cast in terms of a contempt proceeding."  Deponents reason that their failure to comply with a court order constitutes contempt, especially since sanctions were to follow as a result.  As such, deponents believe that the requisites of a contempt finding and corresponding punishment are present and that the requirements of Rule 304(b)(5) have been met.  We disagree.

The import of Supreme Court Rule 304(b)(5) is clear, and the case law upon which the rule is based is well settled.  Rule 304(b)(5) requires that there be "[a]n order 
finding a person or entity in contempt
 which imposes a 
monetary or other penalty
." (Emphasis added.)  155 Ill. 2d R. 304(b)(5).  The orders appealed from in this case are devoid of any indication that there was contempt finding or even a penalty imposed, monetary or otherwise, that relates to a contempt finding.  Thus, it seems apparent that the requirements of Rule 304(b)(5) have not been met.  

The case law from which Rule 304(b)(5) was derived further supports this conclusion.  The committee comments relating to Rule 304(b)(5) acknowledge that contempt orders were added to the list of appealable judgments to reflect the current practice expressed in 
Silverstein
.  In 
Silverstein
, our supreme court explained that "an order cast in terms of a contempt proceeding imposing sanctions" is appealable because the imposition of a sanction for contempt necessarily follows an original special proceeding that is collateral to and independent of the underlying case from which the contempt arose.  
Silverstein
, 87 Ill. 2d at 172; 
People ex rel. General Motors Corp.
, 37 Ill. 2d at 191; 
In re Marriage of Young
, 244 Ill. App. 3d. at 316; 
Kmoch
, 214 Ill. App. 3d at 190-91.  "It is the end of the proceeding begun against the witness.  There is nothing left to be done but enforce the judgment."  
Silverstein
, 87 Ill. 2d at 172
; see generally 
Kmoch
, 214 Ill. App. 3d at 190-91.  Thus, we believe that the collateral and independent characteristics of the contempt proceeding coupled with the finality of imposing an appropriate penalty for the contempt are the necessary elements that make contempt orders with a penalty appealable.  Therefore, considering that Rule 304(b)(5) was merely meant to employ this method of appeal by rule, we likewise believe that the same elements must still be present.      
 

Deponents' contention that the February order is "cast in terms of a contempt proceeding" belies the underlying thrust of that phrase as the order lacks the requisite elements discussed above.  Neither the order nor the record remotely evinces a finding of contempt.  Moreover, the orders and record are equally devoid of any indication that the penalty was based upon a contempt finding or the result of a contempt proceeding.  That deponents' failure to comply with the trial court's February order may constitute contemptuous conduct which the self-executing penalty was designed to punish does not vitiate the necessity that the trial court make a finding of contempt.  Nor does it dispose of the requirement that the trial court impose an appropriate penalty as punishment.  On this point we note that, because there is no finding of contempt, the self-executing sanction contained in the February order appears to be nothing more than a sanction for discovery violations that the trial court has the authority to enter pursuant to Supreme Court Rule 219.  134 Ill. 2d R. 219.  See 
People ex rel. General Motors Corp.
, 37 Ill. 2d at 183, 189 (appeal dismissed where, although the trial court order was cast in terms of a contempt proceeding, striking pleadings as penalty was not appropriate punishment for contempt); 4 
Illinois Practice §35.6.  As such, if deponents' argument was followed, it would effectively transform typical interlocutory discovery orders into final appealable orders simply because discovery sanctions were imposed.  Thus, in light of the orders allegedly appealed from and the record, we fail to see any basis for our jurisdiction under Supreme Court Rule 304(b)(5).

Deponents contend that, even if the orders lack the necessary elements for an appeal under Rule 304(b)(5), the orders are appealable with respect to the nonparty deponents.  Specifically, deponents contend that a discovery order pertaining to nonparty witnesses is appealable without a violation of that order, a finding of contempt, and a penalty.  Deponents reason that nonparties are able to appeal discovery orders because they are not involved in the principal action and, therefore, an order compelling disclosure resolves the proceeding and constitutes a final order.  This argument, however, is without merit, as it is in direct conflict with our supreme court's decision in 
Silverstein
. 

In 
Silverstein
, the Illinois Attorney General filed suit against five individual defendants.  William Currie, who was not a party to the action, was subpoenaed by one of the defendants for a discovery deposition and for the production of certain documents.   In response, Currie filed a motion to quash, raising issues of privilege and constitutional law.  The trial court denied his motion to quash, but limited the scope of his deposition.  Currie appealed.

The supreme court did not view the discovery order involving a nonparty any differently from one involving a party.  Instead, it found the order to be interlocutory and nonfinal because it was a preliminary order in a pending suit and did not represent the end of an original proceeding.  
Silverstein
, 87 Ill. 2d at 173.  The court observed that Currie could have either obeyed the order or defied the power of the court.  "[O]nly
 after Currie refused to obey the discovery order and a final order imposing sanctions and terminating contempt proceedings was entered against him" would the appellate court have jurisdiction to hear his appeal.  
Silverstein
, 87 Ill. 2d at 173.  Consequently, just like a party, Currie could obtain substantive review of the discovery order only by obtaining a judgment of contempt including a fine or imprisonment.  
Silverstein
, 87 Ill. 2d at 174; 4 Illinois Practice §35.6 ("If the person seeking review of a discovery order is not a party to the litigation, there are no exceptions to the unavailability of immediate review").

Although deponents cite case law in support of their theory, the distinctions in procedural composition between those cases and the instant case are clear and outcome determinative.  In each case, the discovery order concluded an original proceeding initiated against the witness.  For instance, two of the three cases deponents cite deal with witnesses appealing orders compelling them to testify in grand jury proceedings.  
People v. Doe
, 211 Ill. App. 3d 962 (1991); 
In re October 1985 Grand Jury No. 746
, 154 Ill. App. 3d 288 (1987).  The key distinction between the instant case and the grand jury cases is that an order to compel in the latter context does not arise within a "pending suit."  
In re October 1985 Grand Jury No. 746
, 154 Ill. App. 3d at 292; but see 
People v. Doe
, 211 Ill. App. 3d at 965 (court blurs reasoning set forth in 
In re October 1985 Grand Jury No. 746
, 154 Ill. App. 3d 288, by failing to clearly acknowledge that a grand jury proceeding is not considered a "pending suit").  This is because a grand jury investigation is simply that--an investigation.  
In re October 1985 Grand Jury No. 746
, 154 Ill. App. 3d at 290.  Therefore, an order to compel against a witness within the context of grand jury proceedings represents the end of an original proceeding lodged against the witness.

The third case deponents cite, 
Laurent v. Brelji
, 74 Ill. App. 3d 214 (1979), involves a pending suit in an administrative agency and a separate proceeding in the circuit court for the enforcement of a 
subpoena
 duces tecum
 against a witness.  Specifically, the Civil Service Commission (Commission) was conducting a discharge proceeding against James Laurent.  As part of his defense, Laurent had issued by the administrative hearing officer a 
subpoena
 duces tecum
 that was served on Dr. Brelji.  In turn, Brelji filed a motion to quash the subpoena, which was denied by the hearing officer.
  Laurent and the Commission filed a petition in circuit court seeking enforcement of the subpoena.  The trial court entered an order directing Brelji to testify and produce certain records.   

In finding that the trial court's order was final and appealable, the court reasoned: 

"After the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated.  In that sense it was distinguishable from other discovery orders entered in a cause pending in the same court.  The order of the court finally determined the rights of the parties before it and terminated the litigation."  
Laurent
, 74 Ill. App. 3d at 216.

Thus, the key distinction between 
Laurent
 and the instant case is that the discovery order imposed in 
Laurent
 arose from a proceeding in the circuit court that was separate from the underlying suit pending before the Commission.  As a consequence, the trial court's order to compel was a final order of a proceeding initiated solely to compel Currie to respond to the 
subpoena
 duces tecum
.  As such, 
Laurent 
as well as the grand jury cases are clearly distinguishable and fail to support deponents' contentions.    

In conclusion, we note that our dismissal may seem unfair at this late stage in light of the fact that, prior to oral argument, another division of this court denied plaintiffs' motion to dismiss the appeal for want of jurisdiction.  Although we would rather address the merits of the appeal now, sparing the parties the necessary hassle of securing a contempt finding and penalty, we nonetheless lack such authority.

III.  Conclusion

For the reasons discussed above, we dismiss this cause for want of jurisdiction.

Dismissed.  

GORDON, P.J., and COUSINS, J., concur. 

FOOTNOTES
1:
While Supreme Court Rule 304(a) allows appeals from final judgments disposing of one or more but fewer than all the parties or claims, the trial court must make an express written finding that there is no just reason for delaying either enforcement or appeal of the judgment before a party can effectuate an appeal under the rule.  155 Ill. 2d R. 304(a).