THIRD DIVISION

September 29, 2000

No.  1-99-1358 )

) 

) 
Appeal from the Circuit

)   Court of Cook County

EMILIO and MARY REDA, )

) 

Plaintiffs, )

           )

v. 
 ) No. 96 L 6417
 

) 

ADVOCATE HEALTH CARE, f/k/a )

LUTHERAN GENERAL HEALTH SYSTEM, )

d/b/a LUTHERAN GENERAL HOSPITAL, )

INC., et al. )

)

Defendants-Appellees, ) 

) Honorable

(Susan Capra, ) David R. Donnersberger,

) Judge Presiding.

Contemnor-Appellant). ) 

) 

PRESIDING JUSTICE HALL delivered the opinion of the court:

I.  BACKGROUND

Susan Capra appeals from a circuit court order holding her in civil contempt for refusing to comply with prior orders of the court directing her to produce psychological and psychiatric documents subpoenaed in a medical malpractice suit.  On appeal, Capra contends that the circuit court erred in holding her in civil contempt for refusing to produce the psychiatric records of 
her client, Emilio Reda, because such records are provided privileged protection under the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 
et seq
. (West 1998)).  For the reasons that follow, we affirm the judgment of the circuit court.

This case arises out of a medical malpractice action brought by Emilio and Mary Reda (plaintiffs), against Advocate Health Care, f/k/a Lutheran General Health System, d/b/a Lutheran General Hospital, Inc., et al. (defendants).  Plaintiffs' December 17, 1996 complaint alleged that, in June 1994, defendants were negligent in tendering postoperative care to Emilio following a knee surgery.  The complaint further alleged that, as a result of defendants' malpractice, Emilio suffered injuries including amputation of the right foot, renal failure, and a stroke.  Emilio sought recovery for the injuries he sustained.  Mary, Emilio's spouse, sought recovery for loss of society, companionship and affection.  

Defendants made a discovery request for production of Emilio's medical records, including those records of Dr. Samuel DeLisi.  On or about November 7, 1997, Capra made an objection to the discovery request for records from DeLisi.  Capra noted that DeLisi was a psychiatrist and, thus, those medical records were protected by privilege.  On August 20, 1998, defendants filed a motion to compel Emilio's medical records from DeLisi.

On November 5, 1998, following an 
in camera
 inspection of Emilio's medical records, the circuit court entered an order stating:

"Plaintiffs are to produce complete records of Dr. DeLisi and V.A. Hospital to defense counsel within 14 days (on or before November 19, 1998)." 

On November 19, 1998, plaintiffs filed an emergency motion to vacate the November 5, 1998 order compelling plaintiffs to produce certain medical records. 

On March 17, 1999, the circuit court entered an order stating:  

"Plaintiffs' [e]mergency [m]otions are denied; [p]laintiffs are given until March 22, 1999, to produce the psychological/psychiatric records of Emilio Reda to defense counsel ***"

 

On April 6, 1999, the circuit court held Capra in civil contempt for refusing to comply with the discovery orders regarding disclosure of Emilio's mental health information.  The circuit court assessed Capra a fine in the amount of $100 with an additional penalty of $10 per day until such time that the discovery orders were complied with.  This appeal followed.

II.  ANALYSIS

A.  STANDARD OF REVIEW

A contempt proceeding is an appropriate method for testing the correctness of a discovery order.  
Lewis v. Family Planning Management, Inc.
, 306 Ill. App. 3d 918, 715 N.E.2d 743 (1999).  Where an individual appeals a contempt judgment imposed for violating a discovery order, that discovery order is subject to review.  
Almgren v. Rush-Presbyterian-St. Lukes Medical Center
, 162 Ill. 2d 205, 216, 642 N.E.2d 1264 (1994). Therefore, this court must review the propriety of the November 5, 1998, and March 17, 1999, discovery
 
orders requiring disclosure of Emilio's mental health information.  Whether an individual has introduced his mental health as an element of his cause of action constitutes a question of law.  
D.C. v. S.A.
, 178 Ill. 2d 551, 687 N.E.2d 1032 (1997).  Our review is 
de
 
novo
.  
In re Marriage of Bonneau
, 294 Ill. App. 3d 720, 723, 691 N.E.2d 123 (1998). 

B.  THE MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES CONFIDENTIALITY ACT

     The Mental Health and Developmental Disabilities Confidentiality Act (the Act) (740 ILCS 110/1 
et seq.
 (West 1998)) guarantees that mental health records will be privileged and confidential.  The Act provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act."  740 ILCS 110/3(a) (West 1998).  The Act defines "confidential communication" or "communication" as:

"any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient.  Communication includes information which indicates that a person is a recipient."  740 ILCS 110/2 (West 1998).

The Act makes confidential any communication made during or in connection with providing mental health or developmental disabilities services to a recipient and any record kept in the course of providing such services.  A recipient is defined, by the Act, as a "person who is receiving or has received mental health or developmental disabilities services." 740 ILCS 110/2(a)(West 1998).  

Section 10(a)(1) of the Act governs disclosure of confidential information in civil cases and provides in relevant part:

"(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.

(1) Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought *** finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-

recipient relationship or to the recipient or other whom disclosure is likely to harm. *** [N]o record or communication between a therapist and a recipient shall be deemed relevant for purposes of this subsection, except the fact of treatment, the cost of services and the ultimate diagnosis unless the party seeking disclosure of the communication clearly establishes in the trial court a compelling need for its production." 740 ILCS 110/10(a)(1) (West 1998).

Thus, before the circuit court can order disclosure, it must find that the recipient has introduced his mental condition as an element of his claim or defense.  If he has, the court must conduct an 
in camera
 examination of the testimony or other evidence to determine if it is relevant, probative, and not unduly prejudicial.  If he has not placed his mental health at issue, disclosure of the records or communications is not permitted.  

The circuit court in this case found that Emilio had placed his mental health at issue under the terms of section 10(a)(1) of the Act.  We agree.  The evidence indicates that Emilio has suffered injuries including amputation of the right foot, renal failure, and stroke.  Additionally, Emilio complained of severe headaches, loss of memory, changes in comprehension and difficulties in performing daily activities.  At her deposition, Mary testified that her husband experienced personality changes after the operation.  Mary specifically testified: 

"He's very emotional.  He's very emotional. *** He gets very frustrated ***.  Extremely frustrated.  More than before. [H]e can be very mean, extremely mean.  And I'm always at fault."  

Mary also testified that he never behaved in this manner before the surgery.  Plaintiffs contend that Emilio's marked changes in personality, loss of memory, deficits in comprehension and difficulty performing routine tasks are neurological injuries only.  We, however, believe that these "injuries" may be reasonably interpreted or characterized as psychological traumas.  Accordingly, we believe that testimony given by plaintiffs regarding these "injuries" placed Emilio's mental health at issue.  Finally, after finding that Emilio had placed his mental health at issue, the circuit court conducted an 
in camera
 examination of Emilio's mental health information.  The circuit court subsequently determined that evidence regarding Emilio's mental health was relevant, possessed probative value and was not unduly prejudicial to plaintiffs.  This is a question of fact, and there is nothing in the record which indicates that this decision was against the manifest weight of the evidence.   

We find that the November 5, 1998 and March 17, 1999 orders requiring discovery of Emilio's mental health information were proper pursuant to section 10(a)(1) of the Act. This court further finds that Capra subjected herself to a contempt finding for the purpose of testing the validity of a court order.  Case law has found this to be an appropriate method to secure an interpretation in good faith and not contemptous of the court.  
People v. Shukovsky
, 128 Ill. 2d 210, 219 (1988); 
Hinojosa v. Josyln Corp.
, 262 Ill. App. 3d 673, 680 (1994); 
In re Marriage of Daniels
, 240 Ill. App. 3d 314 (1992).  Therefore, the trial court's order of contempt against Capra is vacated.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and vacated in part. 

Affirmed in part and vacated in part.

BARTH, J., concurs.  

JUSTICE SOUTH, dissenting.

Respectfully, I must dissent.  The majority has focused on an isolated statement plaintiff Mary Reda made in response to defense counsel's question during her discovery deposition regarding any changes she noticed in her husband.  She answered truthfully that yes, he appeared to be more emotional, more frustrated and meaner than he was before the surgery.  Now defendants have seized upon that and argue that Emilio's mental health condition has been raised for purposes of the Act.  However, a careful reading of the pleadings makes it clear that plaintiffs have never made a claim for Emilio Reda's psychological trauma, and no amount of interpretation or extrapolation from discovery depositions can make it so.  

The Act was carefully drawn to maintain the confidentiality of mental health records except in cases where the plaintiff has introduced his mental health as an issue.  
Sassali v. Rockford
 
Memorial Hospital
, 296 Ill. App. 3d 80, 693 N.E.2d 1287 (1998). The privilege exists unless "mental condition" is specifically made a part of either the claim or defense and is made so by the pleadings.  
Webb v. Quincy City Lines, Inc.
, 73 Ill. App. 2d 405, 219 N.E.2d 165 (1966).

The privilege is too important to be brushed aside when the mental condition of the plaintiff may be only peripherally involved.  
Tylitzki v. Triple X Service, Inc.
, 126 Ill. App. 2d 144, 261 N.E.2d 533 (1970).  A recipient of mental health services waives the confidentiality of his records only if he affirmatively places his own mental health condition at issue.  
Sassali
, 296 Ill. App. 3d at 83.  When patients receive treatment from a mental health professional, they have a right to expect that in most circumstances their records will be kept in confidence.  That is the promise made by the Act.  See 
Mandziara
 
v. Canulli
, 299 Ill. App. 3d 593, 701 N.E.2d 127 (1998). 

Neither plaintiffs' complaint nor defendants' defense has raised Emilio Reda's mental condition. 
I have carefully read the pleadings, and nowhere am I able to locate the issue of Emilio's mental condition.  A neurological injury is not synonymous with psychological damage as the majority would suggest.  Nor does neurological injury directly implicate psychological damage.  I believe that the majority's finding that plaintiff's mental condition was introduced in this case will set in motion an erosion of the protection afforded mental health care recipients and the confidentiality to which the Act says they are entitled.  I am afraid that any passing reference to a person's mental condition following an injury or trauma will immediately give rise to disclosure under the Act.  Opposing counsel need only ask the question in order to trigger the exception to confidentiality.  I do not believe that is what is contemplated under the Act or case law. 

Therefore, I would find that the circuit court erred in holding attorney Capra in contempt of court and would vacate the

order.