THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff and
Petitioner-Appellee, *v.* JOHN DOE, Defendant.—(ELAINE McCALL,
Respondent-Appellant.)

Fourth District    No. 17306

Opinion filed December 30, 1981.—Rehearing denied January 28, 1982.

Hugh J. Graham and Richard J. Wilderson, both of Graham & Graham, of
Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Donald M. Cadagin,
Assistant State's Attorney, of counsel), for the People.

Sandra G. Nye, of Oak Park, for *amici curiae* Illinois Psychiatric Society *et al.*

Harry L. Kinser, of McLaughlin, Kinser & Bryant, of Chicago, and Kenneth
C. Robbins, William C. Kennedy, and Jeffrey W. Maysent, all of Oak Brook, for
*amicus curiae* Illinois Hospital Association.

JUSTICE GREEN delivered the opinion of the court:
This appeal is from a judgment of the circuit court of Sangamon
County entered on June 13, 1981, finding respondent, Elaine McCall, a
psychiatric therapist, in contempt of court for refusing to answer a
question before a Sangamon County grand jury and fining her $250. At all
times she has claimed the answer privileged from disclosure by the terms
of the Mental Health and Developmental Disabilities Confidentiality Act
(Ill. Rev. Stat. 1979, ch. 91½, par. 801 *et seq.*). We hold the privilege not to
be applicable and affirm.
The evidence upon which the contempt finding was made was
substantially undisputed. Appearing first before the grand jury on May
14, 1981, respondent testified she had previously talked with law enforce-
ment officers about a drawing, appearing in a local newspaper, purport-
ing to be a composite sketch of a person suspected of an ax murder which

had been committed in a hardware store. Claiming statutory privilege, she refused to state whether she had seen anyone resembling the figure in the drawing. On May 21, 1981, the circuit court entered a rule upon her to show cause why she should not be held in contempt for refusing to answer the question.

A hearing was held on the rule on June 9, 1981. Bobby Joe Kyle, a patient at the St. John's psychiatric unit where respondent worked, testified that he overheard a conversation in which one patient stated to another that he had committed murder at a hardware store. Kyle stated he did not know the name of the person making the statement. A Springfield police officer then testified to having spoken with Kyle, in respondent's presence, about the foregoing conversation. The officer stated respondent (1) indicated the patient alleged to have made the statement resembled the person in the composite drawing, (2) indicated the patient had been admitted after the ax murders, and (3) refused to give further information about the patient. Respondent testified the composite drawing would have meant nothing to her except for the conversation with Kyle and the patient alleged to have made the statement having been in the psychiatric unit.

The trial court ordered respondent to answer the specific question as to the name of the person resembling the one in the drawing. The court also stated respondent would be subject to being held in contempt if she refused to answer. Nevertheless, she still refused to name the individual when she returned to the grand jury on June 11, 1981. She admitted she had seen a person matching the one in the drawing but refused to answer the question, "What is the individual's name?" Later that day she was taken before the circuit court where she affirmed she had refused to answer the question and still refused to do so. The court then held her in contempt and imposed the fine of $250.

Section 3(a) of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (Ill. Rev. Stat. 1979, ch. 91½, par. 803(a)) states:

> "All records and communications shall be confidential and shall not be disclosed except as provided in this Act."

Section 10(a) of that Act (Ill. Rev. Stat. 1979, ch. 91½, par. 810(a)) states:

> "Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications."

Section 2 of the Act defines the terms "communications," "recipients," and "record" as follows:

> "The terms used in this Act, unless the context requires otherwise, have the meanings ascribed to them in this Section.

(1) 'Confidential communication' or 'communication' means any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. Communication includes information which indicates that a person is a recipient.

\* \* \*

(6) 'Recipient' means a person who is receiving or has received mental health or developmental disabilities services.

(7) 'Record' means any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided. Record does not include the therapist's personal notes, if such notes are kept in the therapist's sole possession for his own personal use and are not disclosed to any other person, except the therapist's supervisor, consulting therapist or attorney. If at any time such notes are disclosed, they shall be considered part of the recipient's record for purposes of this Act. Record does not include testing material used in the course of providing services if the disclosure of such material would compromise the objectivity or fairness of the testing process." Ill. Rev. Stat. 1979, ch. 91½, par. 802.

Throughout the proceedings respondent has maintained she was entitled to the privilege because her knowledge of the identity of the person she would name as the person resembling the one in the drawing arose from her employment as a nurse and therapist at the psychiatric unit at St. John's Hospital and the person's presence as a patient there. At her June 11, 1981, appearance before the grand jury, she testified she could not remember whether she had ever treated or talked to the person. The parties do not dispute that respondent was a "therapist" as defined by section 2(9) of the Act (Ill. Rev. Stat. 1979, ch. 91½, par. 802(9)), due to her employment as a nurse in the psychiatric unit, or that patients in the unit were recipients within the meaning of section 2(6) thereof.

As we pointed out in *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 392 N.E.2d 929, the Act was adopted as an attempt to encourage and protect certain types of confidential relationships by making certain information obtained through them confidential and privileged against disclosure. The legislature recognized that suppression of this information could operate as a substantial detriment to law enforcement and the protection of the citizenry, and attempted to provide for a privilege only when the

benefits outweighed the detriments. Much of the State's argument in its brief focuses upon the damage the exercise of the privilege imposes upon law enforcement and contends some exceptions should be implied from the legislation. The State does not argue that the instant situation involves any express exceptions to the Act. However, as we stated in *Laurent*, section 3(a) of the Act indicates that the only exceptions are those expressly provided for in the Act.

The legislative history of provisions for privilege from disclosure by persons working with mental patients also negates the theory that there are implied exceptions with reference to furnishing information to law enforcement personnel. Section 12—3(a) of the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 12—3(a)) provided for a privilege with reference to the records of patients in public and private mental hospitals but excepted from coverage inquiries by certain persons, including the State's attorney of the county from which the patient came, the county of the patient's residence, or the county in which the hospital was located. Upon the repeal of the foregoing, no such provision was placed in the Mental Health Developmental and Disabilities Confidentiality Act.

We affirm, not because the present situation involves an exception to the Act, but because respondent's knowledge of the name of the person she considered to resemble the person depicted in the drawing was not privileged by the express terms of the Act. In answering the question, she would not be disclosing a "recipient's record" or that which constitutes a communication within the meaning of section 2(1) of the Act.

One of respondent's theories is that by answering the question, she would be giving "information which indicates that a person is a recipient" within the meaning of section 2(1) because the person sought to be identified was, in fact, a recipient. None of the information she had given to the grand jury in response to questions by the prosecutor indicated the person was a recipient. Her answer naming the person would not have done so. We do not interpret section 2(1) to clothe with privilege information which, when taken with other information, would indicate a person was a patient. If that was so, it would be hard to imagine the limitations of the privilege. Had the respondent answered the question and then been asked how she knew of the respondent, exercise of the privilege might well have been proper. If the proceeding were a trial, an awkward situation would be created if the witness was required to state the name of the person resembling the person depicted in the drawing but was permitted to claim privilege to being questioned as to how she gained the information. However, the proceeding here was an inquiry before a grand jury. That body could receive the answer and make whatever use it

could of the answer without any party being prejudiced by not being able to determine how the witness knew the name.

Respondent also claims that even if her answer would not have indicated the person named was a recipient, the answer would have disclosed the "recipient's record" or his "communications" because her knowledge of his identity was obtained in the course of her duties as a therapist. She does not maintain her answer would recite the contents of any record nor does she allege she obtained the information by examining any record. We do not find that her answer would have disclosed the record of the person named and, accordingly, it was not privileged for that reason. The question of whether her answer would otherwise disclose "communications" is more complicated.

In discussing the application of a prior statutory psychiatrist-patient privilege applicable to "communications relating to diagnosis or treatment of the patient's mental condition between patient and psychiatrist * * *" (Ill. Rev. Stat. 1975, ch. 51, par. 5.2) and comparing it to the physician-patient privilege which applied to "any information [the physician or surgeon] may have acquired in attending any patient * * *" (Ill. Rev. Stat. 1975, ch. 51, par. 5.1) we said:

> "At least one writer has stated that 'information' and 'communication' are treated as synonymous terms by the courts in the context of this privilege. ('The Physician-Patient Privilege', 56 Nw.U.L. Rev. 263, 270 (1961).) However, the legislature has used two different words and the implication, at least, is that different meanings are to be attached." (*In re Westland* (1976), 48 Ill. App. 3d 172, 176, 362 N.E.2d 1153, 1156.)

We nevertheless held the psychiatrist-patient privilege to be applicable there to information the psychiatrist had obtained as the obvious result of his conversation with the patient. We also stated the psychiatrist might have been properly permitted to testify to his observations of the patient.

Here, respondent makes no claim she learned the name of the person resembling the one in the drawing through conversations with him, nor does she claim the information was obtained by a conversation or other communication with somebody else. Thus, even in the broad context of the Act, respondent's answering of the question by naming the individual would not have been a disclosure of a communication.

Our affirmance is for the reasons stated.

Affirmed.

MILLS and TRAPP, JJ., concur.