2016 IL App (1st) 142918

FIFTH DIVISION
April 29, 2016

No. 1-14-2918

|  |  |  |
|---|---|---|
| | ) | Appeal from the |
| MARK THOMPSON, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 13 CH 26625 |
| | ) | |
| N.J.; CLAUDIA WELKE, M.D.; STEPHANIE | ) | |
| LOCASCIO, M.S., NCC, LPC; and NORTHSHORE | ) | Honorable |
| UNIVERSITY HEALTHSYSTEM, | ) | Franklin U. Valderrama, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | | |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Mark Thompson, filed a three-count declaratory judgment complaint against

defendants N.J.,[1] Welke (N.J.'s psychiatrist), Locascio (N.J.'s therapist), and NorthShore

University HealthSystem (the record custodian of N.J.'s mental health records) (collectively, the

defendants) in the circuit court of Cook County.  Plaintiff sought a declaration that N.J., a former

high school student he privately coached, waived the confidentiality protections of section

10(a)(1) of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Act)

---

[1] We will use N.J.'s initials to protect her privacy as she was a minor at the time the
incident at issue herein occurred.

(740 ILCS 110/10(a)(1) (West 2014)) by introducing her mental condition as part of a discharge proceeding brought by the Illinois State Board of Education (Board) against him.

¶ 2    In response, N.J. filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)), arguing she did not assert a claim against plaintiff nor did she introduce her mental condition as required under the Act.  In a written order, the circuit court granted the motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) with prejudice, finding plaintiff could not allege that N.J. filed a "claim" so as to bring her under the purview of section 10 of the Act.

¶ 3    Plaintiff now appeals the order of the circuit court of Cook County dismissing his declaratory judgment complaint with prejudice.  On appeal, plaintiff, *pro se*, contends he sufficiently alleged that N.J. waived her privilege under the Act so as to warrant the disclosure of her mental health records and, in turn, have a declaratory judgment entered in his favor.  For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                BACKGROUND

¶ 5    The following facts are taken from plaintiff's complaint and the exhibits attached therein.  Plaintiff's complaint provides an extensive history of his employment with the Chicago Public Schools (CPS) and his private coaching relationship with N.J.  We recite only those facts relevant to our opinion herein.

¶ 6    On August 10, 2012, the Board approved charges against plaintiff pursuant to section 34-85 of the Illinois School Code (105 ILCS 5/34-85 (West 2012)) in a dismissal proceeding seeking to terminate his employment as a CPS employee.  The charges specified plaintiff conducted himself in an unbecoming manner while a CPS employee when he, after a prior warning for serious employee misconduct, engaged in inappropriate conduct of a sexual nature

with N.J., a 17-year-old female student, in March of 2010. The charges further specified that plaintiff sent threatening text messages to N.J.'s mother in February of 2012. The disclosure of plaintiff's inappropriate sexual conduct with a student arose from Welke's May 3, 2011, report to the Illinois Department of Children and Family Services (DCFS) wherein Welke reported that N.J. had disclosed that plaintiff sexually assaulted her when she was 17 years old.

¶ 7    The charges against plaintiff specifically provided:

"1. Violating the July 28, 2004 *Resolution By The Board of Education of The City of Chicago Declaring Certain Acts of Misconduct by Employees to be Particularly Egregious Warranting Severe Disciplinary Action*, Bod. Rep. No. 04-0728-RS2.

2. Violating Section 5-9 of the Chicago Public Schools' Employee Discipline and Due Process Policy that prohibits any cruel, immoral, negligent, or criminal conduct or communication to a student, that causes psychological or physical harm or injury to a student.

3. Violating of [*sic*] Section 5-10 of the Chicago Public Schools' Employee Discipline and Due Process Policy that prohibits employees from soliciting, commanding, urging, inciting or requesting a sexual act of a student; or intentionally or knowingly engaging in any sexual conduct or act with a student.

4. Violation of Section 5-15 of the Chicago Public Schools' Employee Discipline and Due Process Policy that prohibits employees from engaging in any act or conduct prohibited by Board Rules, Municipal Code of the City or [*sic*] Chicago, the Illinois Compiled Statutes, applicable laws of other states, or federal statutes, that may be deemed irremediable conduct.

5. Violation of Section 5-17 of the Chicago Public Schools' Employee Discipline

and Due Process Policy that prohibits the violation of school rules, or Board rules, policies, or procedures which result in behaviors that grossly disrupt the educational process in the classroom and/or school.

6. Conduct unbecoming a Chicago Public Schools employee."

¶ 8    The matter was initially set for a dismissal hearing on August 31, 2012, but was subsequently continued to September 30, 2013.  On September 18, 2013, the hearing officer signed subpoenas requested by plaintiff directing Locascio and Welke to provide, "Any and all records pertaining to [N.J.] for diagnosis, treatment, and counseling for any medical or mental condition including but not limited to any psychiatric and psychological conditions."

¶ 9    On September 25, 2013, Welke brought an emergency motion to quash the subpoena, arguing that the subpoena failed to comply with the Act.  After reviewing Welke's motion, plaintiff's counsel voluntarily withdrew the subpoenas issued to Locascio and Welke.

¶ 10    Thereafter, the hearing officer indicated in an e-mail to both parties' counsel that during a conference call he had previously agreed with plaintiff's counsel that N.J.'s mental health records were "relevant and necessary for the purpose of preparing for the cross-examination" of N.J.  The hearing officer, however, indicated that the parties had not previously discussed what provision of section 10 of the Act allowed such a disclosure.  The hearing officer then took the matter under advisement.

¶ 11    On October 26, 2013, the hearing officer issued a ruling regarding his ability to order the disclosure of N.J.'s mental health records.  After interpreting section 10 of the Act, the hearing officer determined that he did not have the authority to issue such a subpoena and that the matter regarding the disclosure of N.J.'s mental health records had to be resolved in the circuit court. Nonetheless, the hearing officer indicated the hearing scheduled for December 9, 2013, would

proceed, but that N.J. could be recalled should her mental health records subsequently be disclosed.

¶ 12    Thereafter, on December 2, 2013, plaintiff filed a three-count declaratory judgment complaint against defendants. Plaintiff sought a declaration that N.J. waived the protections of section 10(a)(1) of the Act by introducing her mental condition as part of the discharge proceedings brought by the Board. Specifically, plaintiff alleged that N.J. introduced her mental condition during interviews with Linda Brown (Brown) an investigator with the Office of the Inspector General (OIG). During N.J.'s first interview, N.J. disclosed to Brown that she was being treated by Locascio and Welke and that she shared with Locascio "some of the things" plaintiff said to her. Thereafter, N.J. signed a consent form which allowed Brown to speak with Locascio regarding the treatment she provided to N.J. as it related to plaintiff. The consent form was valid for one year. Within that year, Brown interviewed Locascio four times and Locascio disclosed aspects of N.J.'s treatment as it related to plaintiff. Plaintiff's complaint further alleged that during the discharge proceedings counsel for the Board informed him that Locascio and Welke had information relevant to the charges against him.

¶ 13    Attached to plaintiff's complaint were 14 exhibits: (1) a May 3, 2011, DCFS report of abuse and neglect; (2) a May 3, 2011, DCFS "Contact Note"; (3) a June 24, 2011, report by Brown regarding her interview of N.J.; (4) a June 16, 2011, consent form signed by N.J. authorizing Locascio's employer to release "confidential information regarding Mark Thompson"; (5) a series of four reports of interviews Brown had with Locascio dated July 28 and November 9, 2011, and May 10 and May 12, 2012; (6) a May 30, 2012, investigative summary from the OIG; (7) the notice of dismissal hearing and list of six charges brought against plaintiff; (8) the Board's response to plaintiff's request to produce in the dismissal proceeding; (9)

plaintiff's subpoena of Welke; (10) plaintiff's subpoena of Locascio; (11) Welke's emergency motion to quash the subpoena; (12) the hearing officer's e-mail to the Board's and plaintiff's attorneys asking under which exception of the Act this matter falls; (13) the hearing officer's e-mail for guidance on the matter; and (14) the hearing officer's ruling that he does not have the authority to order the disclosure of N.J.'s mental health records under the Act.

¶ 14    On February 27, 2014, N.J. filed a motion to dismiss plaintiff's declaratory judgment complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)).[2]  N.J. argued she did not assert a claim against plaintiff as she never filed suit against him and she was not a party to the Board's administrative action against plaintiff.  N.J. further asserted she was issued a subpoena by plaintiff's counsel to attend the hearing as a witness and during her testimony at the dismissal hearing she never placed her mental health at issue.  N.J. further stated it was plaintiff who introduced her mental condition in the discharge proceedings as he had continually questioned her mental health in an attempt to make her psychiatric records relevant. Attached to N.J.'s motion to dismiss was the transcript of her December 9, 2013, testimony in the Board's administrative action against plaintiff.  Although the motion was brought pursuant to section 2-619.1 of the Code, it did not allege the particular subsection of section 2-619 under which the motion was being brought and it did not include an affidavit.

¶ 15    On April 11, 2014, plaintiff filed a response to N.J.'s motion to dismiss arguing N.J. consented to the release of her mental health records pursuant to sections 5 and 10(a)(1) of the Act (740 ILCS 110/5, 10(a)(1) (West 2014)).  Plaintiff asserted that during the course of the investigation N.J. disclosed to investigators that she was being treated by Locascio and Welke.

---

[2] Defendants NorthShore and Welke filed answers to the complaint.  The record does not contain a responsive pleading from Locascio.

Plaintiff further argued that on June 16, 2011, N.J. signed a release allowing Locascio to speak with investigator Brown regarding the treatment she provided to N.J. as it related to plaintiff. Thereafter, Locascio fully cooperated with Brown and answered questions directly relating to her therapy sessions with N.J. Plaintiff maintained that the Board used the information it acquired from Locascio (based on N.J.'s release) to bring dismissal charges against him and, therefore, N.J. consented to the release of her mental health records.

¶ 16     In support of his argument, plaintiff relied on *Goldberg v. Davis*, 151 Ill. 2d 267 (1992), for the proposition that the Act allows for disclosure of mental health records where the mental illness and treatment received are a crucial element to the case. According to plaintiff, N.J.'s mental health records are "central to the CPS's case and must be presented to establish that [defendant] caused physical or psychological harm to her."

¶ 17     In addition, plaintiff argued N.J. failed to attach an affidavit to her section 2-619.1 motion in contravention of section 2-619 of the Code. In the prayer for relief, plaintiff requested the court deny N.J.'s motion to dismiss, but did not request leave to amend his complaint should the motion be granted.

¶ 18     In reply, N.J. distinguished *Goldberg* and argued that in seeking her mental health records plaintiff "is only attempting to humiliate and embarrass [*sic*]" her. N.J. also argued that plaintiff failed to disclose an expert that could utilize the records he seeks for a legitimate purpose.

¶ 19     On August 19, 2014, the circuit court entered an order granting N.J.'s motion to dismiss pursuant to section 2-615 of the Code finding plaintiff had no legal tangible interest in N.J.'s mental health records. Plaintiff's complaint was dismissed with prejudice. This appeal followed.

¶ 20                                     ANALYSIS

¶ 21     Prior to addressing the merits of the appeal, we observe that plaintiff, now proceeding *pro se*, raises numerous arguments on appeal that he did not bring before the circuit court. Specifically, plaintiff now contends:  (1) that a waiver of privilege through one physician is deemed to be a waiver as to another physician who jointly attended or treated patient for the same condition; (2) that the mental health records were pertinent to N.J.'s credibility as a witness; (3) that N.J.'s mental health records fall within a common law "fundamental fairness exception"; (4) that his due process rights were violated; (5) that "he could have corrected potential Section 2-615 defects by citing other case law and statutes that support that [N.J.] waived her mental health confidentiality privileges"; and (6) that the circuit court did not have before it all the relevant evidence.  Defendants assert that plaintiff's failure to raise these issues before the circuit court forfeits these arguments on appeal.  We agree.  "It is well settled that an unsuccessful party may not advance a new theory of recovery on appeal" (*In re Detention of Anders*, 304 Ill. App. 3d 117, 123 (1999)), and that doing so results in forfeiture of that issue (see, *e.g., 1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (issues not raised in the trial court are forfeited); *Stuckey v. Renaissance at Midway*, 2015 IL App (1st) 143111, ¶ 30 (finding it would be improper to address an argument raised for the first time on appeal)).  "The purpose of this court's forfeiture rules is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction."  *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 14.  The record before us reveals that plaintiff never raised any of these issues before the circuit court.  Accordingly, we find these arguments to be forfeited.

¶ 22     Moreover, plaintiff raises numerous arguments on appeal regarding what he alleges is the hearing officer's "mental health relevancy decision."  We observe that the hearing officer did not

make an explicit finding that N.J.'s mental health records were relevant. The relevancy of mental health records can only be determined after an *in camera* review. See 740 ILCS 110/10(a)(1) (West 2014). No such review occurred here and, in fact, the hearing officer expressly ruled he would not conduct such a review. We additionally decline to address this argument as plaintiff's complaint sought a declaratory judgment and was not an interlocutory appeal. Accordingly, plaintiff is not appealing from a decision made by the hearing officer, but from the circuit court's dismissal of his declaratory judgment action. These two matters constitute separate proceedings. See *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172-73 (1981) (an administrative proceeding is a separate proceeding from the circuit court action seeking enforcement of a subpoena in that administrative proceeding). Accordingly, we limit our discussion of the issues in this case to the judgment of the circuit court granting the motion to dismiss plaintiff's declaratory judgment complaint.

¶ 23    On appeal, plaintiff also asserts that the Board has no "authority to preside over a dismissal hearing to determine whether any abuse occurred based on an investigation initiated from a *** DCFS report." In response, defendants contend plaintiff forfeited this argument by failing to raise it in the circuit court and failing to cite authority. Defendants further maintain this court has no jurisdiction to consider this argument where the Board was not a party to this case. We agree with defendants. In addition to failing to raise this issue in the circuit court, we observe that the Board was not a party to the declaratory judgment action nor is it a party to this appeal and, thus, we have no jurisdiction to consider this issue. See *Central National Bank in Chicago v. Fleetwood Realty Corp.*, 110 Ill. App. 3d 169, 182 (1982) ("A court is without jurisdiction to enter a decree or order which directly affects a right or interest of a person not before it.").

¶ 24    We further acknowledge that plaintiff requests we strike defendants' statement of facts because they included "false or disputable statements" that were "extracted from the OIG Report." We decline plaintiff's request. When considering a motion to dismiss, the circuit court, as well as the reviewing court, takes all well-plead allegations as true. See *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068-69 (1992); *Armstrong v. Hedlund Corp.*, 316 Ill. App. 3d 1097, 1101 (2000). Written documents that are incorporated by reference into a plaintiff's complaint, such as the OIG report was here, are treated as part of the pleading. See *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 47. In filing his declaratory judgment complaint, plaintiff voluntarily attached the OIG report as an exhibit. Then, in response to N.J.'s motion to dismiss, plaintiff relied on statements within the OIG report to argue the sufficiency of his complaint. Accordingly, as required by our well-established case law, we decline to strike defendants' statement of facts and will consider the statements contained within the OIG report for the purposes of determining whether plaintiff's complaint was sufficiently plead. See *id.*

¶ 25    The following arguments raised by plaintiff remain for our consideration: (1) the circuit court erred in dismissing his complaint as he sufficiently plead that N.J. waived her mental health confidentiality privileges pursuant to section 10(a)(1) of the Act; and (2) even if his complaint was insufficiently plead he should have been granted leave to amend his complaint. We address each argument in turn.

¶ 26    Plaintiff's complaint was dismissed pursuant to a motion brought under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2014). This section permits section 2-615 and section 2-619 motions to be filed together as a single motion, but the combined motion shall be divided into parts which are limited to and specify the single section of the Code under which relief is

sought. *Id.* In this case, the circuit court dismissed plaintiff's complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). We, however, may affirm on any basis that appears in the record. *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998). Under either section 2-615 or section 2-619, our review is *de novo*. *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 64. *De novo* consideration means we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 27     A motion to dismiss pursuant to section 2-619 of the Code admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or which are established by external submissions acting to defeat the complaint's allegations. 735 ILCS 5/2-619 (West 2014); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). "If the 'affirmative matter' asserted is not apparent on the face of the complaint, a section 2-619 motion must be supported by affidavit." *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 349 (2010) (citing *Kedzie*, 156 Ill. 2d at 116).

¶ 28     In contrast, a motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. 735 ILCS 5/2-615 (West 2014); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). When ruling on a section 2-615 motion, the relevant question is whether the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). Exhibits attached to a complaint become part of the pleading for a motion to dismiss. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18. A motion to dismiss should not be granted "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Tedrick v. Community Resource*

*Center, Inc.*, 235 Ill. 2d 155, 161 (2009). Illinois is a fact-pleading state; conclusions of law and conclusory allegations unsupported by specific facts are not sufficient to survive dismissal. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996).

¶ 29    In this case, N.J.'s motion to dismiss was improper under section 2-619 as N.J. (1) failed to indicate under what subsection it was being brought (*In re Estate of Lasley*, 2015 IL App (4th) 140690, ¶ 15) and (2) failed to attach the required affidavit (*Piser*, 405 Ill. App. 3d at 349). We observe, however, that as part of her motion to dismiss N.J. attached a copy of her dismissal hearing testimony which took place shortly after plaintiff filed the instant declaratory judgment action. As this testimony was not included in plaintiff's complaint and was attached to the motion to dismiss without the requisite affidavit, we decline to consider it in this appeal. See *Krueger v. Lewis*, 342 Ill. App. 3d 467, 472 (2003). Accordingly, we turn to consider whether plaintiff's complaint was sufficiently plead in order to survive a motion presented pursuant to section 2-615 of the Code.

¶ 30    Plaintiff here fashioned his complaint as a declaratory judgment action. The elements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests. *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). A complaint for a declaratory judgment must meet the requirements of section 2-701 of the Code (735 ILCS 5/2-701 (West 2014)). Essentially, there are two main, general requirements for standing to bring an action for declaratory relief. First, there must be an "actual controversy." 735 ILCS 5/2-701(a) (West 2014). Whether there is an actual controversy "requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events."

*Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). Second, the party seeking the declaration must be "interested in the controversy." 735 ILCS 5/2-701(a) (West 2014). "The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected." *Underground Contractors Ass'n*, 66 Ill. 2d at 376. "The declaratory judgment procedure allows the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting. [Citation.]" (Internal quotation marks omitted.) *Beahringer*, 204 Ill. 2d at 372-73. " 'The declaratory judgment procedure was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right. [Citation.] The remedy is used to afford security and relief against uncertainty so as to avoid potential litigation.' " *Id.* at 373 (quoting *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995)). In the present matter, we find that plaintiff has not set forth the requirement of a legal tangible interest as is obligatory under section 2-701 of the Code.

¶ 31    Plaintiff can only have a legal tangible interest in N.J.'s mental health records if he is able to state a claim under section 10(a)(1) of the Act (740 ILCS 110/10(a)(1) (West 2014)). Initially, we observe that our supreme court and the appellate courts have "consistently recognized that the purpose of the Confidentiality Act 'is to preserve the confidentiality of the records and communications of persons who are receiving or who have received mental-health services.' " *Johnston v. Weil*, 241 Ill. 2d 169, 182 (2011) (quoting *Novak v. Rathnam*, 106 Ill. 2d 478, 483 (1985)). The Act "only applies to situations in which the patient is seeking treatment for a

13

mental health condition." *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 446 (1990). Thus, under the Act, where a person makes statements to a therapist in the course of a professional consultation, those statements are privileged. *Dymek v. Nyquist*, 128 Ill. App. 3d 859, 863 (1984).

¶ 32    The Act is carefully drawn to maintain the confidentiality of mental health records except in the specific circumstances explicitly enumerated. *Norskog v. Pfiel*, 197 Ill. 2d 60, 71 (2001). Where permitted, the Act has been carefully drafted with narrowly crafted exceptions by the legislature to limit any disclosures to accomplish a particular purpose. *Id.* According to our supreme court, "When viewed as a whole, the Act constitutes a 'strong statement' by the General Assembly about the importance of keeping mental health records confidential." *Id.* at 71-72 (quoting *Mandziara v. Canulli*, 299 Ill. App. 3d 593, 599 (1998)). Therefore, anyone seeking the nonconsensual release of mental health information faces a formidable challenge and must show that disclosure is authorized by the Act. *Deprizio v. MacNeal Memorial Hospital Ass'n*, 2014 IL App (1st) 123206, ¶ 16; *Chand v. Patla*, 342 Ill. App. 3d 655, 662 (2003).

¶ 33    Generally, the Act provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3(a) (West 2014). This includes, "any record kept by a therapist or by an agency in the course of providing mental health *** service to a recipient" and "any communication made by a recipient or other person to a therapist *** during or in connection with providing mental health *** services to a recipient." 740 ILCS 110/2 (West 2014); see *Stuckey*, 2015 IL App (1st) 143111, ¶ 20. A "recipient" is defined by the Act as "a person who is receiving or has received mental health or developmental disability services." 740 ILCS 110/2 (West 2014). A "therapist" is defined by the Act to mean "a psychiatrist, physician, psychologist, social worker, or nurse providing mental health or

developmental disabilities services." *Id.* In this case, neither party disputes that N.J. is a "recipient" and that Locascio and Welke are "therapists" under the Act.

¶ 34 Section 10(a), however, provides specifically enumerated exceptions for where disclosures can be made without the mental health care recipient's consent. 740 ILCS 110/10(a) (West 2014). The exception at issue here provides:

> "(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.
>
> (1) Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought, or, in the case of an administrative proceeding, the court to which an appeal or other action for review of an administrative determination may be taken, finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." *Id.*

Accordingly, in order for plaintiff to state a cause of action for the disclosure of medical records under the Act, he must allege that N.J. introduced her mental condition or any aspect of her

services received for such condition as an element of her claim or defense. *Id.*

¶ 35    Here, taking all the allegations contained in the pleadings in the light most favorable to plaintiff, we conclude that N.J. did not introduce her mental condition, or the services she received for that condition, as an element of her claim or defense in the dismissal proceeding.

¶ 36    "[B]efore the circuit court can order disclosure, it must find that the recipient has introduced his mental condition as an element of his claim or defense." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 57 (2002).  "If the recipient has not placed his mental health at issue, disclosure of the records or communications is not permitted." *Id.*  In other words, it is not enough that plaintiff, under his theory of the case, or another party to the proceeding, placed N.J.'s mental condition at issue.  See *id.* at 59; *Sassali v. Rockford Memorial Hospital*, 296 Ill. App. 3d 80, 83 (1998).  As stated by our supreme court in *Reda*:

> " '[I]t is the affirmative aspect which should be controlling.  The privilege is too important to be brushed aside when the mental condition of the [individual] may be only peripherally involved.  It is not difficult to consider the many ways in which it could be argued that mental conditions were at issue, and soon there would exist more areas of inquiry deemed exceptions to the privilege than there would be areas of inquiry protected by the privilege.' "  *Reda*, 199 Ill. 2d at 59 (quoting *Tylitzki v. Triple X Service, Inc.*, 126 Ill. App. 2d 144, 149 (1970)).

¶ 37    The "claim" at issue here is found in the charges brought by the Board against plaintiff in the dismissal action.  The only charge that alluded to N.J.'s mental condition was the allegation that plaintiff violated section 5-9 of the CPS "Employee Discipline and Due Process Policy" which prohibits "cruel, immoral, negligent, or criminal conduct or communication to a student, that causes psychological or physical harm or injury to a student."

16

¶ 38    We find *Sassali* to be instructive.  In *Sassali*, the plaintiff asserted the trial court erred in finding that the Act authorized the defendants to release her medical records to a court expert during involuntary commitment proceedings.  *Sassali*, 296 Ill. App. 3d at 83.  On appeal, one of the defendants argued that the plaintiff placed her mental condition at issue during the involuntary commitment proceedings " 'when she sought to refute the allegations of the State as to her mental instability.' "  *Id.*  The *Sassali* court disagreed holding that plaintiff did not place her mental condition at issue, instead it was the State who placed the plaintiff's mental condition at issue when it filed its petition for involuntary admission.  *Id.*  Accordingly, the *Sassali* court concluded the disclosure was improper under section 10(a)(1) of the Act.  *Id.* at 84.

¶ 39    As in *Sassali*, N.J. did not introduce her mental condition as an element of her claim or defense.  Rather, the Board placed N.J.'s mental condition at issue when it raised the claim that plaintiff caused N.J. psychological harm.  Because N.J. did not affirmatively place her mental condition at issue in plaintiff's disciplinary proceedings, disclosure of her mental health records is not proper.  See also *Mandziara v. Canulli*, 299 Ill. App. 3d 593, 599-600 (1998) (plaintiff did not affirmatively place her mental health condition at issue, her husband, through his lawyer, did); *Thiele v. Ortiz*, 165 Ill. App. 3d 983, 993 (1988) (filing a wrongful death action did not introduce the decedent's mental condition); *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388, 403 (1989) (the plaintiff in a medical malpractice action could not place defendant-doctor's mental condition at issue); *Tylitzki*, 126 Ill. App. 2d at 149 ("We agree that it is the affirmative aspect which should be controlling.").  Consequently, plaintiff is not entitled to N.J.'s mental health records under this theory.

¶ 40    Plaintiff contends N.J. waived her confidentiality privilege under the Act when she informed OIG investigators over the course of multiple interviews that she was being treated by

Locascio and Welke as a result of the sexual assault.

¶ 41     In this regard, we find *Norskog* to be instructive.  In *Norskog*, the plaintiff, individually and as the administrator of her daughter's estate, filed a civil complaint against the defendants: Steven, the individual who murdered their daughter; and his parents.  *Norskog*, 197 Ill. 2d at 63. The complaint alleged the plaintiff's 13-year-old daughter was stabbed to death by Steven when he was 17 years old and dating their daughter.  *Id.*  Steven initially pleaded not guilty in his criminal case and provided notice that he would be asserting an insanity defense.  *Id.*  Thereafter, while free on bond, Steven killed his brother and assaulted his sister.  *Id.*  Subsequently, Steven pleaded guilty to the plaintiff's daughter's murder and the murder of his brother and was sentenced to life imprisonment without the possibility of parole.  *Id.*

¶ 42     In the civil action, the plaintiff's complaint contained numerous factual allegations which made reference to Steven being the recipient of mental health services around the time he murdered her daughter.  *Id.* at 64.  Over the defendants' claim of privilege, the plaintiff persisted in her efforts to obtain Steven's mental health records by subpoenaing the defendants to appear and produce records which would reveal when and for what purpose Steven may have received mental health or psychiatric treatment prior to her daughter's death.  *Id.* at 65.  In support of her claim to this information, plaintiff argued, in relevant part, that Steven waived the confidentiality privilege to all of his mental health records by disclosing his mental health information to school officials, his probation officer, and others.  *Id.*  The circuit court ordered the disclosure of certain of Steven's mental health records.  The defendants refused to comply with the court's order and were held in contempt.  *Id.* at 67-68.  Thereafter, the defendants appealed the circuit court's ruling.  *Id.* The appellate court reversed the orders holding the defendants in contempt of court and further ruled that the defendants could not be required to disclose Steven's mental health

records. *Id.* The plaintiff then appealed the matter to our supreme court. *Id.*

¶ 43    Pertinent to the matter at bar, our supreme court considered whether Steven's confidentiality privilege was waived because he shared information with school officials and court personnel. *Id.* at 78-79. Our supreme court observed that the Act provides for the consensual disclosure of information by a recipient and that section 5 of the Act "makes it clear that a recipient may consent to disclosure of information for a limited purpose and that any agency or person who obtains confidential and privileged information may not redisclose the information without the recipient's specific consent." *Id.* at 79 (citing 740 ILCS 110/5 (West 2000)). The court held that assuming Steven's mental condition had been shared with school officials and a probation officer, "we draw from this fact no conclusion that Steven intended to waive his confidentiality privilege." *Id.* The court held that, "Any confidential information which may have been shared was released for a limited purpose and did not constitute a general waiver of the confidentiality privilege." *Id.* The court further explained that the Act places "strict limits on the circumstances under which disclosure of confidential information may be allowed, as well as the amount of confidential information that may be released." *Id.* at 80. "Accordingly, an initial hurdle will be showing that the recipient's mental condition was introduced by the recipient. If this hurdle cannot be met, the information may not be admitted, regardless of whether the opposing party's claim or position would be advanced or facilitated by the disclosure of the information." *Id.*

¶ 44    In the case at bar, the exhibits attached to plaintiff's complaint demonstrate that N.J. discussed the statements she made to Locascio and Welke with OIG investigators and others regarding the sexual assault. We conclude, however, that these statements were made for a limited purpose and in making these statements N.J. did not intend to waive her confidentiality

privilege. See *id.* at 79. Accordingly, as in *Norskog*, we find, "Any confidential information which may have been shared was released for a limited purpose and did not constitute a general waiver of the confidentiality privilege." *Id.*

¶ 45    Plaintiff likens the facts of this case to those in *Goldberg*. Our supreme court in *Goldberg*, however, recognized that the facts of that case were "unique," and thus *Goldberg* is distinguishable from the case at bar. *Goldberg*, 151 Ill. 2d at 277. In *Goldberg*, C.B., the 30-year-old complaining witness, reported the plaintiff, Dr. Goldberg (her psychiatrist), to the Illinois Department of Professional Regulation (Department) for engaging in an inappropriate sexual relationship with her. *Id.* at 269. Based on C.B.'s complaint, the Department sought revocation, suspension, or other appropriate action against Dr. Goldberg. *Id.* An administrative hearing was held where C.B., Dr. Goldberg, and Dr. Davis (C.B.'s treating physician at the time) testified. *Id.*

¶ 46    Dr. Goldberg testified he diagnosed C.B. with bulimia and severe borderline personality disorder. *Id.* at 270. He further testified it was "important for him to observe her eat during the course of treatment." *Id.* at 271. Dr. Goldberg denied he had sexual encounters with C.B. and that, in fact, she had tried to initiate a sexual encounter with him, but "he refused her advances, she yelled at him and left." *Id.* at 272. Dr. Goldberg further testified a transference occurred, but was not based on reality or any sexual overtures made by him. *Id.* at 280.

¶ 47    Dr. Davis testified she had been treating C.B. for the past year and diagnosed her with bulimia and a mild borderline personality disorder. *Id.* at 273. Dr. Davis agreed that C.B. had an erotic transference to Dr. Goldberg, but that "it was a response to reality." *Id.* at 274.

¶ 48    At the conclusion of the Department's case, Dr. Goldberg's counsel requested the medical records from a hospital where C.B. was treated prior to her treatment with Dr. Goldberg. *Id.* at

275. The Department objected. *Id.* Thereafter, the hearing officer postponed the hearing in order for Dr. Goldberg to seek production of the medical records in the circuit court. *Id.* at 276. After Dr. Goldberg filed an action in the circuit court to compel Dr. Davis to produce relevant mental health records, the Department moved to dismiss. *Id.* The circuit court entered an order compelling Dr. Davis to produce the records for an *in camera* inspection to determine relevancy. *Id.* at 276-77. Instead, Dr. Davis filed an interlocutory appeal before the appellate court. *Id.* at 277. The appellate court reversed the circuit court's order and Dr. Goldberg appealed to our supreme court. *Id.*

¶ 49     Our supreme court defined the issue before it as "whether the circuit court abused its discretion when it ordered the defendant to produce all medical records for an *in camera* inspection." *Id.* The court looked to section 10(a)(1) of the Act for guidance. *Id.* at 277-78. The court first determined that "C.B. has introduced her mental condition as well as services received as part of the Department's complaint." *Id.* at 278. The court reasoned that C.B.'s diagnosis of borderline personality disorder was significant to the issue of whether any sexual misconduct occurred. *Id.* at 279. The court explained that part of the diagnostic criteria for a borderline personality disorder is a psychotic transference. *Id.* at 279-80. Our supreme court noted that both doctors agreed that a transference occurred, but that Dr. Davis testified it was based on reality whereas Dr. Goldberg testified it was not. *Id.* at 280. The court defined transference as " 'the primarily unconscious tendency of an individual to assign to others in the present those feelings and attitudes originally connected with significant figures during the course of early development.' " *Id.* (quoting R. Simon, Clinical Psychology and the Law 284 (1987)). The court noted that, "Intense rage may follow a transference" "after the therapist is unable to gratify the patient's unrealistic expectations." (Emphasis and internal quotation marks

21

omitted.) *Id.* (quoting Gerald Adler, *Valuing and Devaluing in the Psychotherapeutic Process*, 22 Archives of Gen. Psychiatry 454, 456 (1970)).

¶ 50    The court concluded, "In light of the characteristics of a borderline patient, this court finds that C.B.'s diagnosis is a crucial element of the Department's complaint. Both parties admit that C.B. has a borderline personality, but disagree on the severity of the illness, and, as such, the court finds that the mental condition of C.B. has been introduced." *Id.* According to our supreme court, "In view of the characteristics of a borderline patient, C.B.'s condition is more than peripherally involved in this case." *Id.* at 283. Our supreme court ultimately held the circuit court did not abuse its discretion when it ordered an *in camera* inspection of C.B.'s medical records. *Id.*

¶ 51    *Goldberg* is distinguishable from the case at bar in numerous ways. First, *Goldberg* involved the complaint of an inappropriate sexual relationship by a 30-year-old woman to the Department. Here, N.J., while a minor, made a disclosure to her therapist regarding the sexual assault. Welke, as a mandatory reporter, notified DCFS of the allegation. N.J. did not affirmatively make a claim against plaintiff. Second, *Goldberg* involved the production of the mental health records of an adult. Here, plaintiff seeks N.J.'s mental health records, which would include records from when she was a minor. Third, our supreme court found that C.B. introduced her mental condition as an element of her claim when, during the Department's case-in-chief, Dr. Goldberg and Dr. Davis testified differently regarding the severity of her borderline personality disorder. *Id.* at 278-79. Our supreme court inferred that the issue of the severity of her borderline personality disorder was a "crucial element of the Department's complaint" because, due to C.B.'s transference, she could have become enraged when Dr. Goldberg was " 'unable to gratify [her] unrealistic expectations' " (emphasis omitted) (*id.* at 280 (quoting Alder,

*supra* at 456)), thus affecting her credibility regarding whether the sexual acts she alleged actually occurred (*Id.* at 283). In this case, the record before us does not disclose that N.J. affirmatively introduced her mental condition. First, unlike C.B., N.J. was not receiving medical treatment from plaintiff at the time she alleges she was sexually assaulted. Second, unlike Dr. Goldberg, plaintiff is not a psychiatrist and cannot diagnose N.J. with a disorder. Third, the record does not contain any expert testimony or evidence indicating that N.J. was suffering from a serious psychiatric disorder, such as borderline personality disorder, that would cause her to fabricate sexual assault allegations.

¶ 52    Plaintiff also relies on *Laurent v. Brelji*, 74 Ill. App. 3d 214 (1979), to support his argument that, "The trial court has no authority to narrow the scope of a claim to exclude a DCFS-related claim of child sexual abuse that results in an administrative dismissal hearing." According to plaintiff, *Laurent* provides that a circuit court is "prohibited from using the term 'claim' narrowly" and that the *Laurent* court "explain[s] that a 'claim' is just not synonymous with a cause of action."

¶ 53    The facts of *Laurent* involved a Civil Service Commission discharge proceeding against Laurent, an employee of a mental health center. *Id.* at 215. During the administrative proceeding, L.S., a patient at the mental health center, testified that while he was a patient Laurent harassed and abused him. *Id.* Laurent then sought L.S.'s mental health records via a subpoena *duces tecum* directed to the superintendent of the mental health center. *Id.* The superintendent did not comply with the subpoena nor did he comply with the hearing officer's order that he produce L.S.'s mental health records. *Id.* Laurent then filed an action in the circuit court, seeking disclosure of L.S.'s mental health records. *Id.* The circuit court ordered L.S.'s records be produced for an *in camera* review by the hearing officer. *Id.* Dr. Brelji appealed,

contending the introduction of L.S.'s mental condition was not the result of any claim or defense made by L.S. *Id.*

¶ 54　Prior to addressing the merits, the *Laurent* court noted that, "[d]espite any relevance, however, the promotion and protection of certain relationships is deemed to be of greater value than the unqualified disclosure of pertinent information incident to individual disputes." *Id.* at 217. The court explained that "the patient in psychotherapeutic treatment reveals the most private and secret aspects of his mind and soul. To casually allow public disclosure of such would desecrate any notion of an individual's right to privacy. At the same time, confidentiality is essential to the treatment process itself, which can be truly effective only when there is complete candor and revelation by the patient." *Id.* The court observed that "legislative recognition of a testimonial privilege does not afford absolute protection against disclosure. Thus, the legislature acknowledged the countervailing societal needs which demand disclosure in certain instances by creating exceptions to the no-disclosure mandate." *Id.*

¶ 55　The *Laurent* court held that on the record before them the conduct at issue related directly to incidents which occurred during L.S.'s hospitalization at the Chester Mental Health Center and that L.S. had introduced an aspect of the services he received there during treatment for his mental condition. *Id.* at 218. Based on these facts, the court concluded that an exception to the privilege of nondisclosure applied in that instance. *Id.* at 218-19.

¶ 56　*Laurent* is distinguishable from the current matter. In *Laurent*, the individual seeking disclosure of L.S.'s mental health records was directly involved in the provision of L.S.'s mental health services. *Id.* at 215. As the court noted, "The facts and issues before the investigating body relate directly to the witness' hospitalization." *Id.* at 218. Further, the alleged abuse "specifically arose during the course of [L.S.'s] hospitalization." *Id.* In the case at bar, plaintiff

was not directly involved in the provision of N.J.'s mental health services nor did the abuse arise during N.J.'s mental health treatment. Importantly, as expressly indicated by the *Laurent* court, its decision was "limited" and "in no manner implies that a person, merely by presenting himself as a witness, must run the risk of having his entire mental history drug out and exposed before a public hearing for the ostensible purpose of questioning his perceptive capabilities." *Id.* at 219.

¶ 57    *Laurent*, in this regard, shares more similarities with *Goldberg* wherein the complaining witness was a patient of the individual seeking the mental health records. See *Goldberg*, 151 Ill. 2d at 270. As in *Laurent*, Dr. Goldberg was also directly involved in the provision of the complaining witness's mental health services and it was during the provision of those services that the alleged abuse occurred. See *id.* Accordingly, we find both *Laurent* and *Goldberg* to be inapposite to the case at bar.

¶ 58    We further observe that while subsequent opinions have cited *Laurent* for its general statements regarding the purpose of the Act, none have cited it for its definition of a "claim" as suggested by plaintiff. See *House*, 206 Ill. App. 3d at 442; *Johnston*, 241 Ill. 2d at 183; *Reda*, 199 Ill. 2d at 60; *Mandziara*, 299 Ill. App. 3d at 597; *Pritchard*, 191 Ill. App. 3d at 402; *People v. Doe*, 103 Ill. App. 3d 56, 58 (1981); *People v. Smith*, 93 Ill. App. 3d 26, 33 (1981); *People v. Gemeny*, 313 Ill. App. 3d 902, 908 (2000). Indeed, our supreme court, on numerous occasions, has expressed reservations about *Laurent*, albeit regarding its jurisdictional holding (see *Silverstein*, 87 Ill. 2d at 172), and that in rendering its opinion the *Laurent* court "seemed to assume that the Act applied" (*Wisniewski v. Kownacki*, 221 Ill. 2d 453, 462 (2006)). Moreover, as previously discussed, the opinions that have been issued since *Laurent* was decided in 1979 have established that the recipient must affirmatively place her mental condition at issue in order to waive her privilege under the Act. See *Reda*, 199 Ill. 2d at 59.

¶ 59    We further recognize that the *Laurent* court was seemingly concerned with the possibility that L.S. could initiate a personal action against Laurent for the same allegations of abuse that were stated in his discharge hearing. *Laurent*, 74 Ill. App. 3d at 218. This is not a factor in the case at bar where N.J. did not report the sexual assault to DCFS and, as disclosed in the record, has insisted on not pressing charges against plaintiff. Moreover, in *Ekstrom v. Temple*, 197 Ill. App. 3d 120 (1990), the court held that medical records of nonparty patients were privileged and not subject to disclosure, even though a different result would have been reached had the patients been parties to the malpractice action, based upon an exception to the physician-patient privilege. *Id.* at 130. The physician-patient privilege, much like the Act, provides in relevant part that, "No physician *** shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only *** in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue ***." 735 ILCS 5/8-802 (West 2014); compare 740 ILCS 110/10(a)(1) (West 2014). Thus, subsequent opinions of this court have assuaged the *Laurent* court's concerns. See *House*, 206 Ill. App. 3d at 444 (citing *Ekstrom*, 197 Ill. App. 3d at 130, for this proposition).

¶ 60    Lastly, plaintiff maintains that the circuit court was required to conduct an *in camera* review of N.J.'s medical records prior to granting the motion to dismiss. While the circuit court may conduct an *in camera* review of mental health records in accordance with the Act (see 740 ILCS 110/10(b) (West 2014)), such an *in camera* review is not necessary where the party requesting the records has not established that the recipient has introduced his or her mental condition as an element of his or her claim or defense. See *Reda*, 199 Ill. 2d at 57 ("If the recipient has introduced his mental condition, the court must conduct an *in camera* examination

26

of the evidence to determine if it is, *inter alia*, relevant, probative, and not unduly prejudicial."). As plaintiff cannot allege N.J. introduced her mental condition as an element of her claim, we conclude the circuit court properly dismissed the complaint without conducting an *in camera* review of N.J.'s mental health records.

¶ 61    In sum, plaintiff's initial hurdle was sufficiently pleading that N.J. introduced her mental condition as an element of her claim.  See *id.*  As this hurdle was not overcome, the confidential information sought by plaintiff could not be disclosed regardless of whether his claim or position would be advanced or facilitated by the disclosure of this information.  See *Norskog*, 197 Ill. 2d at 80.  It therefore follows that plaintiff's declaratory judgment action failed to alleged plaintiff had a legal tangible interest in the disclosure of N.J.'s mental health records and the circuit court properly dismissed the complaint.

¶ 62                                Amended Complaint

¶ 63    Plaintiff admits in his reply brief that he never requested leave to file an amended complaint, but contends that his complaint should not have been dismissed with prejudice and that he should be granted an opportunity to replead.  Defendants respond that because plaintiff's counsel never requested leave to amend, plaintiff forfeited review of this claim.

¶ 64    We agree with defendants.  The record in this appeal demonstrates that such relief was never sought before the trial court, plaintiff electing to stand on his complaint and asking the court below only to deny N.J.'s motion to dismiss.  From the record before us, then, we must assume that the circuit court acted within its discretion in refusing to permit any proposed amendment (see *Teter v. Clemens*, 112 Ill. 2d 252, 261 (1986)) and our review has thus been properly limited only to the complaint (see *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 108).

¶ 65    In addition, we observe that a plaintiff "should be given leave to replead unless doing so

would be futile." *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 35. As discussed above, there are no set of facts plaintiff can allege that would require the disclosure of N.J.'s mental health records under section 10(a)(1) of the Act. Accordingly, the circuit court properly dismissed plaintiff's complaint with prejudice.

¶ 66                                        CONCLUSION

¶ 67    For the reasons set forth herein, we affirm the judgment of the circuit court of Cook County.

¶ 68    Affirmed.